PITCHER et al. v. LENNON et al.

(Supreme Court, Appellate Division, First Department. December 11, 1896.)

1. NEGLIGENCE—VIOLATION OF BUILDING STATUTE—LIABILITY OF OWNER.
    The statute regulating building (Laws 1892, c. 275) has for one of its objects the protection of life; and the owner of a building who, in its erection, violates the statute by causing a greater weight to be placed on portions of the foundation than the limit prescribed, is a wrongdoer, negligent as matter of law, and is liable for an injury to an innocent person, of which such violation of the statute is the proximate cause.

2. SAME—WORK DONE BY CONTRACTOR.
    The fact that the work on a building constructed in violation of the building law (Laws 1892, c. 275) was done by contractors does not relieve the owner of the responsibility where he authorized, or had knowledge of, the manner of its construction.

3. SAME—APPROVAL OF PLANS BY BUILDING DEPARTMENT OF CITY.
    The approval of the plans for a building by the building department of the city where it is erected does not absolve the owner from liability growing out of its construction in violation of the statute.

Appeal from trial term, New York county.

Action by Clair Pitcher, administrator, and Mario Mauro, administratrix, of the estate of Giovanni Mauro, deceased, against William F. Lennon and others. From a judgment entered on a verdict in favor of plaintiffs, and from an order denying a motion for a new trial (38 N. Y. Supp. 1007), defendant Lennon appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, WILLIAMS, PATTERSON, and O'BRIEN, JJ.

David M. Neuberger, for appellant.
John M. Gardner, for respondents.

O'BRIEN, J. On March 1, 1895, Giovanni Mauro, plaintiffs' intestate, was killed at the buildings which were being erected on Orchard street, this city, by the appellant, Lennon, as owner, under contract, among others, with Comes and Gleaves, portions of which buildings fell. Comes and Gleaves were sued jointly with Lennon, but on the trial it was consented that the action be discontinued as against them, and that it proceed against Lennon alone.

Not only were the plans for the buildings filed by Lennon, but in his statement to the building department it appears that he was to superintend; and that he did so superintend is shown by the evi-

dence of Comes, who testified that he received directions to do all that he did in putting the brickwork up from Lennon. It appears, further, that the latter furnished to the contractors the plans by which the work was to be done, and also that he supplied the materials, the contractors not having agreed to do so, and ordered the granite blocks or templets whose too narrow distribution of weight caused the fall and violated the statute. It was shown that the cause of the fall was the imposition of more weight than was permitted by statute upon that point of the subwall which was crushed, to wit, between 60 and 90 tons per superficial foot, when the statute (Laws 1892, c. 275) prohibited more than $11\frac{1}{2}$ tons on a wall laid in lime and cement mortar, such as was used on these buildings. These facts appearing, and, in addition, that Mauro was killed upon the buildings, considerable time in argument was taken up upon the trial, as it has upon this appeal, in fixing or designating the legal ground upon which Lennon's liability should or should not be predicated. This, upon the trial, led to some confusion (which, however, as we shall show, did not prejudice the appellant) as to whether or not, to sustain a recovery, the plaintiffs must prove negligence in fact or negligence in law, or that Lennon was the creator of a nuisance. Although the learned trial judge finally took from the jury the consideration of negligence in fact, and predicated the plaintiffs' right to recover upon the theory that they must establish that the defendant was guilty of creating a nuisance, he was induced by the appellant to charge several requests by which it was left to the jury to determine whether Lennon had used due care and diligence, and as to whether the acts claimed to constitute a nuisance were open and visible, and such as were seen, or could have been seen, by Lennon. Although a number of such propositions were charged at defendant's request, his exceptions urged upon this appeal are mainly for refusals to charge a great number of other requests, he having, in all, presented 52, which were more favorable than those referred to. We deem it, however, unnecessary to discuss in detail these various exceptions to refusals to charge, because, in our view of the law, not only were the refusals proper, but the requests, as charged, were more favorable to the defendant than he was entitled to.

Neither is it our purpose, because irrelevant, to discuss the essential ingredients of the various forms of action on which it is claimed. the plaintiffs framed their complaint, and by evidence sought to sustain it upon the trial; for we desire to avoid the confusion which was introduced upon the trial by the use of terms and legal nomenclature, and by a consideration of theories, which were in no way requisite to a determination of the appellant's liability. It is a matter of little moment whether we designate the action as one framed for negligence in fact or negligence in law, or for the creation of a nuisance, because, upon the allegations of the complaint, and the proof offered, there was legal warrant for holding the defendant liable upon the ground that he knowingly violated a statute which, among other things, was enacted to protect human life. This became clear to the learned judge, who, having taken

under advisement the motion for a new trial, subsequently rendered an opinion in which he stated, in substance, that the action proceeded against the owner on the ground avowed by the plaintiffs' attorney:

"That the structure was erected in a manner forbidden by statute, was a menace to life, and in legal effect a nuisance; and that such violation was a proximate cause of the fall, and of the decedent's death. Without regard to the form in which the question has come up, the courts have invariably held that every person violating a statute is a wrongdoer, negligent in the eyes of the law; and that any innocent person injured by such violation, if it be the proximate cause of the injury, may, in a proper case, recover damages from employer and contractor, jointly or severally, it not being in the power of an owner to escape liability by making a contract with another to commit the wrong for him."

This statement of the law is supported by such an array of authorities that we must regard the proposition as fully established. Thus, in Jetter v. Railroad Co., *41 N. Y. 154, it is said:

"The axiomatic truth [is] that every party whose person is injured by the act which constitutes the violation of the statute is entitled to a civil remedy for such injury, notwithstanding any redress that the public may also have."

In McRickard v. Flint, 114 N. Y. 222, 21 N. E. 153, the court sustained a charge:

"That any one not complying with a statute is considered as doing so with knowledge of the law, and is negligent."

And in Willy v. Mulledy, 78 N. Y. 313, it was said:

"Here was a duty imposed by statute to keep fire escapes. It is a general rule that whenever one owes a duty, whether it be imposed by contract or statute, a breach thereof causing damage gives a cause of action."

These and many more cases that might be referred to support what we must regard as the well-settled doctrine—First, that if one upon whom the statute imposes a duty violates that duty, and the violation results in an injury, he is liable, irrespective of all questions of care and prudence; and, second, that it is no defense to prove that the actual breach of law was committed by a person employed by, and acting for, him upon whom the duty rests, if the latter knew of and sanctioned, even if he did not direct, the illegal act.

Apart from the favorable view which the learned trial judge took of the defendant's position, by charging requests on the subject of negligence, he in effect predicated defendant's liability upon the finding of two facts by the jury:    First, that the buildings fell because of too much weight at a given point, in violation of the statute; and, second, that the defendant knew the unlawful weight was imposed, or had notice of it.    Such a finding, with evidence to support it, firmly establishes the defendant's liability, because it cannot be doubted that an owner who permits the doing of an illegal act by one whom he has employed, from which damages flow, is liable therefor, when such act is committed in the performance of the work to be done, and constitutes a breach of a duty laid upon such owner.    He is not at liberty to stand by, with knowledge of the breach of law, and escape liability merely because the actual work is being done by another, whether such other

be an independent contractor, or an agent for whose doings he would, in general, be responsible. The duty is laid upon the owner; and, although possibly cases might exist where he would not be liable, this cannot be true where he has knowledge of what is being done, and makes no effort to stop it. In truth, the jury might have made a much stronger finding against the defendant than knowledge and permission of the unlawful act, viz. that he contracted for and instructed the doing of it. He furnished to the builders both the plans and specifications by which they were to construct, and the material the insufficiency of which was the direct cause of the accident. Thus, whether the fatal vice inhered in the plans originally, or was due to a faulty detail of construction, the defendant would be liable, for he directed the use of both plans and material.

Many of the requests which the court refused to charge related to the question of defendant's responsibility for plans made by an architect, involving an illegal method of construction. In substance, the defendant asked that the jury be instructed that the architect held the position of an independent contractor; that the defendant employing him was not bound, at his peril, to ascertain whether any vice inhered in the plans; and that, if he employed a competent architect, and directed him to prepare safe and suitable plans and specifications, he had fulfilled the duty resting upon him. As an abstract proposition, this may be true. The defendant would not, in such a case, have "contracted for the doing of an illegal act" under the cases. He would have directed only what was proper and legal, and, if without knowledge of the breach of law committed, would not, perhaps, be liable. We are not called upon, however, to pass upon the question, for the requests are quite inapplicable to the evidence adduced. There is no evidence here from which the jury could have been permitted to infer that the defendant occupied the position of one who had employed an architect, with proper instructions, and left the whole matter in his hands. The only evidence that he employed an architect at all is the indorsement upon the plans of the name of a firm described as such. For all that appears, the defendant may have known, in the first place, that the plans contained an illegal feature, or even have directed it. The evidence, at all events, of subsequent knowledge, is strong. The case is not the one—to which the defendant's requests would apply, if at all—of the architect in collaboration with the builder, without intervention on the part of the owner. It was the owner, Lennon, who took the plans and gave them to the builder, and superintended the construction. He thus learned, or should have learned, that the building was being erected in an illegal manner; and this, as has been said, renders him liable.

The defendant is not absolved by his attempt to show that his plans were approved by the building department, for the latter could not, if it would, authorize a building contrary to law, or absolve the defendant from his statutory duty

The exceptions other than those relating to the charge as made, and the refusals to charge as requested, we have examined, and do not regard them as well founded.

We think, therefore, that the judgment is right, and it, and the order denying the motion for a new trial, should be affirmed, with costs. All concur.