(47 App. Div. 428.) ·

### BURKE v. IRELAND.

(Supreme Court, Appellate Division, Second Department. January 30, 1900.)

**1. NEGLIGENCE—BUILDING—DEFECTIVE CONSTRUCTION—OWNER'S LIABILITY.**
Where a landowner contracts for the erection of a building in conformity with plans which are inherently defective, and requires construction on a foundation insufficient to support the building, he cannot evade liability for the injury to the contractor's employé, caused by its collapse, by showing that the plans were approved by the building department and the contractor.

**2. SAME—PLANS—ACTS OF ARCHITECT.**
Where the owner of land employs a competent architect to design a building, he must show affirmatively that he fairly committed the subject-matter to the architect, and that the defects in the design were not caused by his interference or direction, in order to relieve himself from liability for injuries to an employé of the contractor caused by inherent defects in the plans.

**3. TRIAL—PROVINCE OF JURY.**
Where a part of defendant's testimony on a former trial of the same case was read by plaintiff to establish defendant's admission of the material point, and defendant read all that other part tending to qualify or explain that relied on to constitute the admission, the issue thus raised was for the jury.

**4. SAME—INDEPENDENT CONTRACTOR.**
Where the owner of land contracts for the erection of a building thereon in conformity with the plans furnished by him, and under the superintendence of his architect, the duty of securing a solid foundation rests on him; and he is responsible for an injury to the contractor's employé caused by a collapse of the building from an insecure foundation, though the contractor was also negligent in laying the foundation.

Goodrich, P. J., dissenting.

Appeal from trial term, Kings county.

Action by Bridget Burke, as administratrix of John Burke, deceased, against John B. Ireland, impleaded with John H. Parker and another, for the wrongful killing of plaintiff's decedent by the collapse of a building. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

Charles F. Brown (Ira D. Warren, on the brief), for appellant.
Charles J. Patterson, for respondent.

HATCH, J. In the discussion of the particular ground upon which, in our view of the case, this judgment may rest, it is not necessary to review the facts further than to state so much as is essential for the assignment of reasons upon which our judgment rests. There has never been any dispute as to the cause of the collapse of the building in question. Two causes concurred: First, the inherently defective and insufficient foundation of earth upon which the concrete was placed for the support of the superstructure; and, second, the insufficient depth of the concrete which was laid upon the earth. Upon the trial the court submitted to the jury two questions, upon which it charged that, if the defendant Ireland was responsible for the conditions involved therein, a recovery might be had. These questions were: Was the plan of the building inherently defective? And was the defendant Ireland responsible for the failure to place the column which fell, upon a secure foundation? When this case was before the court upon a former appeal (50 N. Y. Supp. 369), the rule was laid down governing the liability of the defendant Ireland in respect of these questions in the following language:

"The evidence on the trial tends to establish that one of the most probable causes of the collapse of the building was the defective character of the foundation under the pillar, where the concrete was laid partly over earth, and partly over the old cistern wall. Such, too, is the claim of the counsel for both parties. The question of who was responsible for the defective character of that foundation is not free from doubt. Parker's contract did not include the excavation. Under the specifications, a uniform thickness of eighteen inches of concrete for the piers is prescribed. No provision whatever is made, either in the contract or in the specifications, for the contingency that excavation to the depth of two feet might not find soil on which it was safe to rest the foundation of the piers which were to carry the walls or columns. It might have eventuated, as probably was the actual case, that it was necessary to excavate below the bottom of the cistern wall before it would be safe to commence the laying of the concrete foundation; or it might even have happened that quicksand would be found, and it would be necessary to drive piles, or adopt some other special means to provide a secure place on which to lay the concrete. Under the contract, no duty was devolved upon Parker in these respects, except one, i. e. that no concrete should be laid in trenches until they had been examined by the architect. The duty, therefore, of providing a proper foundation upon which the concrete was to be laid, and of passing upon and determining the sufficiency of that foundation, rested on the owner or his agent. If there was negligence in this respect by the owner or agent, it would not absolve the former from liability, even though the contractor was also careless. The evidence tends to show that the trench was laid out by the foreman of Parker, the contractor, and that the excavation was made and the concrete laid in the absence of the architect. On this state of facts, and assuming that the foundation was improper, the negligence of the contractor's foreman is plain, for the specifications provided that he should not lay concrete until the trenches had been inspected by the architect. But it does not necessarily follow that the architect or superintendent of construction was not also to blame. There is evidence tending to show that he absented himself from the building during the time the foundations were being excavated, and also that he accepted and passed the concrete work without having examined the bed on which it was laid. It may be that the fact that the concrete had already been laid before his attention was called to the trench might be a sufficient excuse for his conduct, and that even a careful man might have been deceived as to the character of the foundation. This, however, was a question of fact for the jury. Therefore we cannot say, as a matter of law, that the appellant was in no wise responsible for an accident occasioned by the improper character of the soil on which the concrete was placed."

The evidence in the present record, so far as it relates to the defective plans, is not essentially different from that which appeared upon the former appeal. Thereunder, the jury were authorized to find that the plans were in fact defective and in violation of the building law. This conclusion is supported by the evidence, which tended to show that 18 inches of concrete was not a sufficient support, even though it were laid upon undisturbed earth; that the area of the concrete was too great for its thickness; and that the weight of the building which the foundation was necessarily required to bear would in time cause a collapse of the structure. It does not need argument to establish that a plan for a building which is insufficient to support it if erected in precise conformity thereto is a defective plan. Such fact is a demonstration that it is faulty. That this plan was imperfect and insufficient we determined was sufficiently established upon the former appeal to support a verdict which so said; and as the evidence upon the subject is as strong as, if not stronger than, before, we must conclude that the verdict in this respect has evidence upon which it may rest. The defendant seeks to avoid this result by several considerations. It is said that the building department and Parker, the contractor, approved of the plans. The approval by the former is not conclusive. It is a circumstance, merely, which may be considered to show that they were perfect. Pitcher v. Lennon, 12 App. Div. 356, 42 N. Y. Supp. 156. Such approval could in no view release a party from the consequences of providing a plan, and erecting a building in conformity thereto, which violated the building laws of the state. The approval by Parker could not aid to perfect the plans, if they were in fact defective, as no agreement with the contractor can shield the person from the obligation which he is required to perform; otherwise, the contractor's approval might operate as a shield to the owner's neglect. Such approval may or may not be a circumstance entitled to consideration in exoneration, but, in any event, it can have no greater weight than the approval by the building department. It is further said that the defendant committed the whole matter of plans and construction to a competent architect, and is to be exonerated for that reason. Upon the former appeal in the Savage Case we said:

"Where an owner employs a competent and skillful architect to design the building, he is not responsible, to the employés of contractors who agree to construct the building according to such design, for faults or defects in the design of which he neither knew nor should have known. Of course, to relieve the owner from liability, it must appear that he fairly committed the subject-matter to the architect, and that the deficiencies or defects of the design did not proceed from his interference or direction."

In a recent case the appellate division in the First department, upon a record similar to the one we are now considering, held the same rule. Fox v. Ireland (Sup.) 61 N. Y. Supp. 1061. Adopting this as the law, we do not find in this record proof conclusive that the defendant committed this matter entirely to an architect. The defendant Ireland was not sworn as a witness upon the present trial; neither was his architect. While there is proof in the record from which it might be found that the architect was competent, yet there

is no conclusive proof that Ireland knew him to be competent when he employed him, or that he made any inquiry as to his competency, or that he committed the subject-matter of the plans and of the construction entirely to the architect. On the contrary, the testimony of Ireland, given upon a former trial, and read upon this trial as an admission, shows that in the construction of the building he reserved to himself the right to make changes in the construction; that he added a story to the building, and directed Parker in and about matters connected therewith. The most that can be said of all that appears is that the defendant employed a competent architect, who made plans, saw them carried out, and superintended the construction of the building. But nowhere does it conclusively appear that he committed the whole subject-matter of the plans and building to the architect. Upon this subject the court charged that, if the defendant really and actually committed the decision of the question of plans to the architect, he might be exonerated. Assuming that the evidence presented this view of the question, the jury were authorized to find that the defendant did not so commit the question, but that he limited the authority of the architect, and reserved to himself the right to give directions concerning the construction. It is claimed that the undisputed statement of the defendant is that he did commit the whole matter to the architect, and that the court was unauthorized to submit such question upon the evidence. Ireland was not sworn upon this trial, but his testimony was read,—a part by the plaintiff, and the remainder by the defendant. This testimony was available to the plaintiff as constituting an admission of fact, in extent as broad as made. When it was so read, the defendant became entitled to read all that other part of the testimony which tended to qualify or explain the portion relied upon as constituting an admission. Grattan v. Insurance Co., 92 N. Y. 274. There was no right, however, to read testimony which did not accomplish this result; and, so far as the testimony read did not qualify or explain, it was no more admissible than would be any other declaration of the defendant, whether the same was in the form of testimony or otherwise. It is no higher grade of testimony than declarations in favor of a party, which are not admissible to establish a fact under the circumstances of this case. It is quite doubtful if any evidence of the defendant which was read in his favor qualified or explained the admissions made by him respecting the architect's relation to the building, or established that the subject-matter was committed to the architect. Assuming, however, that it did qualify or explain, or tended to establish the fact, the court was not authorized to direct the jury that it was conclusive upon the question. It was the province of the jury to attach such weight to the statement as they saw fit. As Ireland was an interested party, they could accept his statements either in whole or in part, or reject them entirely. Volkmar v. Railway Co., 134 N. Y. 418, 31 N. E. 870; Joy v. Diefendorf, 130 N. Y. 6, 28 N. E. 602; Becker v. Koch, 104 N. Y. 394, 10 N. E. 701. Upon this branch of the case, therefore, we think the question was properly submitted to the jury.

As to the second ground, it is perfectly evident that any plan of construction which did not involve a safe and secure support for the building which was to be erected must be, in its very nature, inherently defective. There was testimony in the case that the depth of 33 inches in which the concrete was to be laid was insufficient, even though placed upon undisturbed earth, for the support of the superstructure, and that, in the character of the soil where this building was to be erected, such provision was entirely insufficient as a foundation for the proposed building. We think it must be conceded that the owner of soil known to be composed of quicksand, or which for any other reason would constitute an insecure foundation, could not make a plan of a building to be erected upon such soil, with no other provision for support than would be essential for such purpose if it were erected upon solid earth which was without infirmity of any character. The owner of ground which is infirm must, we think, in making plans of construction, take the fact of such infirmity into consideration; and if it be unknown, but is developed in the course of the construction, he may not proceed with his work, to the peril of others, making no provision against the infirm character of the soil on which he is building, and then shelter himself from liability by the claim that his plans were not defective as applied to a construction upon solid ground. In the present case, if the character of the soil whereon the building was to be erected required $8\frac{1}{2}$ feet of excavation for the columns to rest upon, instead of 33 inches, for the support of the building, then a plan of construction which calls for the latter, instead of the former, is inherently defective. Upon the evidence in this case, the jury were authorized to find that such condition existed. We said in our former decision that Parker's contract did not require anything further than not to lay the concrete in the trenches until they had been inspected by the architect. Garry's contract made no provision with respect to the depth of any excavation required to procure a good bottom, if further excavation was necessary beyond that for which the plans called. From these considerations, the court reached the conclusion that the duty of determining the depth to which the excavation should extend devolved upon the defendant Ireland or his agents. In submitting this question to the jury, the court left it to them to determine whether Ireland knew, or ought to have known, of these conditions. His agent in this regard was the architect, Behrens. Behrens not only prepared the plans, but he superintended the construction. When a point was reached where it became necessary to determine what should be the proper depth of the excavation for a secure foundation, such question must be held to have been work within the owner's control, for the performance of which by the agent selected by him he was responsible. Vogel v. Mayor, etc., 92 N. Y. 10. The primary duty resting upon the defendant Ireland was to secure a sure foundation for his building, and he ought to have known; at least, he is chargeable with the knowledge essential for him to perform the duty properly. As he did not contract with any contractor for a specific depth to which the foundation should be carried, and as the architect had no power

or authority to change or modify his plans, the duty of determining what should be done on account of the infirmity of the soil was one which devolved directly upon the defendant Ireland, and the architect in this respect occupied the relation to Ireland of an ordinary agent. For his failure to properly perform his duty in that regard, the defendant Ireland is chargeable. Nor does it answer to say that the contractor, Parker, was also guilty of negligence in laying the concrete insufficient in thickness, or in permitting it to rest upon the old cistern wall or upon the disturbed earth. It is clearly evident that the cause of the collapse was the resting of the concrete upon an insecure foundation, as well as the insufficiency of the concrete itself. Parker was not charged by his contract with making any depth of excavation whatever; nor does it appear that Garry, by his contract, was charged with such obligation. The testimony is that the soil in which the excavation was made was fine, micaceous sand, approaching quicksand; and the jury would have the right to find that the character of the soil was dangerous, as well as was the presence of the cistern wall. This condition produced a contingency not contemplated by the contract, and not embraced within the clause providing that the foundations were to be laid upon undisturbed earth. That clause of the contract forbids the laying of the concrete upon disturbed earth. It did not, however, absolve the defendant from the obligation to secure a safe foundation. This obligation was primary, and as the defendant made no provision for performing it beyond that for which the plans called, and as the architect was to inspect the trench before the concrete was laid, if then the earth was disturbed by reason of a contingency not contemplated by the plans, the duty rested upon the owner to provide therefor; and the architect charged with the examination must be regarded as his agent for that purpose. No contractor was chargeable with the obligation to go to the bottom of the cistern or beyond it, if that was required. The person chargeable with this duty was the defendant Ireland, and he cannot shelter himself behind the architect in its proper performance. The jury were also authorized to find that after the concrete was laid the bricks of the cistern wall were visible upon inspection. As upon this matter Ireland was chargeable, what could be observed ought to have been observed, and his obligation to correct the same was immediately emergent.

Substantially all of the questions raised as errors in ruling upon the trial and in the charge are covered by the discussion already had. We are not able to see that any substantial error was committed upon the trial, and conclude that the judgment should be affirmed.

Judgment and order affirmed, with costs. All concur, except GOODRICH, P. J., who dissents, and HIRSCHBERG, J., who takes no part.

GOODRICH, P. J. I cannot agree in the conclusion reached by my learned associates, and therefore state my own views, necessarily at some length.

This action originally was brought against the defendant Ireland, the owner of land in the borough of Manhattan upon which a building was in process of erection during the summer of 1895, under contracts with John H. Parker and J. W. Cornell, both of whom were made co-defendants. On August 8th the building collapsed, and in the fall the plaintiff's intestate, while in the employ of one Guider, with whom the defendant had made a contract to do the plastering, was killed. A trial was had in 1896, when the jury rendered a verdict against Ireland and in favor of the other defendants. An appeal was taken by Ireland from the judgment entered on that verdict, but no appeal was taken by the plaintiff from the judgment in favor of Parker and Cornell, and as to them the action has terminated. This court reversed the judgment against Ireland for an error in the charge (26 App. Div. 487, 50 N. Y. Supp. 369), which is not of interest on the present appeal. The general facts of the case are quite fully stated in the opinion, and need not be repeated here. We shall refer to such facts only as may be necessary to point out essential differences in the evidence given at the two trials. In the first appeal the questions arose whether the defendant had employed a competent architect to prepare the plans and specifications, and whether the defendant was responsible for the acts of such architect. Upon that point this court (Mr. Justice Cullen writing) said:

"It does not appear, except from the recitals in the contracts, that Behrens was an architect at all,—much less, that he was a competent or proper one; nor does it in any way appear that Behrens was responsible for the plan and character of the building, and that the appellant was not. For aught that there is in the record before us, the whole plan and character of the building, the size of the foundations, of the walls, of the posts and the girders, may have wholly proceeded from the direction of the appellant. The duty or discretion of an architect is confined within such limits as his employer imposes upon him. The appellant having contracted for the construction of this building, if the building was inherently defective and dangerous, prima facie he is responsible therefor; and if he can escape liability for such inherent weakness and danger by the employment of an architect, and his acting upon the architect's advice, it was incumbent on the appellant to affirmatively show those facts. Therefore the employment or advice of the architect is not an element in this case."

In the opinion, also, in the Savage Case, which was argued at the same time as, and is reported with, the Burke Case, it was said:

"We think that in such case, where an owner employs a competent and skillful architect to design the building, he is not responsible to the employés of contractors who agree to construct the building according to such design, for faults or defects in the design of which he neither knew nor should have known. Of course, to relieve the owner from liability, it must appear that he fairly committed the subject-matter to the architect, and that the deficiencies or defects of the design did not proceed from his interference or direction."

It is to be observed that on the last trial of this action the court embodied the last quotation in the charge, and it is the law governing the present appeal.

The learned counsel for the plaintiff states in his brief that the case was submitted to the jury on two grounds:

"(1) Whether the defendant Ireland was guilty of negligence in having contracted for the construction of a building which was inherently defective and

dangerous, or in violation of the building law; (2) whether the defendant Ire-
land was guilty of negligence in failing to use proper care to provide a proper
bed or bottom upon which to rest the foundation for the third tier of columns.''

The learned counsel for the defendant states the submitted ques-
tions somewhat differently:

"(1) Was there anything in the original plans for the foundation which was
inherently defective? (2) Was the defendant able to judge of the sufficiency
of the foundation as it appeared to him upon the plans as they were prepared
for him? (3) Did the defendant fairly commit the subject-matter of the build-
ing to the architect? (4) Did the defendant furnish to the contractor a safe
and proper bottom upon which to place the foundation for pillar No. 3? Was
the condition of the ground such that the defendant or the architect ought
to have taken notice of a condition which might imperil the construction of the
building? Was there anything there that could be seen? Ought the defendant
or the architect to have discovered the condition of things, and seen to it that
the foundation was not erected upon such a bottom as concededly was found
to exist there subsequently?"

The defendant excepted to each of these portions of the charge.

The first ground upon which, as argued by the plaintiff's counsel,
the case was submitted to the jury, was whether Ireland was negli-
gent in contracting for the construction of an inherently defective
and dangerous building, or one in violation of the building law.
This question involves the qualifications of the architect, the defend-
ant's reliance thereon, the character of the building as originally
planned, and the approval of the plans by the building department.
On the last trial, as well as on the first, neither the defendant Ire-
land nor Behrens, the person named as architect in the building
contract, was examined as a witness. Ireland, however, was ex-
amined as a witness at the subsequent trial of the Savage case. The
plaintiff's counsel on the last trial of this action produced as a wit-
ness Mr. Ayres, counsel for the plaintiff Savage, to prove certain
parts of the testimony given by Mr. Ireland on the Savage trial, and
part of it was practically read to the jury. The method of the ad-
mission of this evidence was not error, as it was evidence of a
statement made by Ireland. The defendant's counsel offered to read
the rest of Ireland's testimony, and the plaintiff objected, but the
court ruled that the defendant was entitled to read "any portion
of this testimony, or all of it, if necessary for that purpose, that
tends to qualify or explain that which has been already introduced";
and additional portions of the evidence were read by the defendant,
without specific objection by the plaintiff's counsel, who subse-
quently read other portions. The testimony was properly admitted,
and forms part of the evidence upon which the appeal is to be de-
cided. Mr. Ireland testified that he employed Mr. Behrens, an archi-
tect, to draw the plans and specifications of the building in ques-
tion; that he had known him for several years, and had previously
employed him on two buildings, the work of which was satisfactory
to the defendant; that before he employed him on previous work
he asked his carpenter if he knew of a good architect, and the car-
penter recommended Behrens; that Behrens told him of several
buildings on which he had been engaged for a number of years, and

that he had been employed by one Mr. Williams, a large builder. There was also evidence from the carpenter who recommended Behrens, to the effect that the latter was good in details of his work. This is all the evidence of Behrens' capacity and character as an architect, and while it might not have been considered, as matter of law, that the defendant had proved Behrens to have been a "competent and skillful architect" for a building of this character, as he was bound to do, in conformity with our previous opinion, yet, when the defendant's counsel asked the court to charge that the evidence showed that Behrens was a proper and competent architect, and that it was not contradicted, the plaintiff's counsel asked the court to charge that the question was not whether Behrens was a competent and proper architect, but whether the defendant actually committed to him the decision of the question of plans and specifications. It must therefore be assumed that it was conceded by the plaintiff that Behrens was shown to have been a competent and skillful architect.

The next question in order is whether the defendant relied upon, and fairly committed the subject-matter of the building to, the architect. Ireland testified that personally he did not know anything as to the required strength or detail of a building of this size and character; that, when he employed Behrens to prepare plans for the present building, he told him what style of building he wanted, but left all of the details to him; that he intrusted the entire management of the plans and specifications of the building to him, stipulating that it should be of the best materials; and that he relied upon Behrens to give him the best kind of a building. It was also proved that Behrens' plans were submitted to and approved by the building department, by the defendant's direction. There is no testimony directly contradicting these facts. The court charged that, the defendant being a layman, it was for the jury to decide "whether or not he was able to judge of the sufficiency of this foundation, as it appeared to him upon these plans as they were prepared for him." But as he employed a competent architect to prepare the plans and specifications, in a matter of which he was ignorant, and committed the matter entirely to him, I think he was not responsible for the errors in the plans of an architect admitted to be competent and skillful. The submission of this question to the jury, against the objection of the defendant, was therefore legal error. Such is the effect of the previous quotation from the opinion of this court in the Savage Case, supra. This is not at all in conflict with Pitcher v. Lennon, 12 App. Div. 356, 42 N. Y. Supp. 156, where Mr. Justice O'Brien said:

"The only evidence that he employed an architect at all is the indorsement upon the plans of the name of a firm described as such. For all that appears, the defendant may have known in the first place that the plans contained an illegal feature, or even have directed it. The evidence, at all events, of subsequent knowledge is strong. The case is not the one—to which the defendant's requests would apply, if at all—of the architect in collaboration with the builder without intervention on the part of the owner. It was the owner, Lennon, who took the plans, and gave them to the builder, and superintended the construction. He thus learned, or should have learned, that the building

was being erected in an illegal manner; and this, as has been said, renders him liable."

In the case of Fox v. Ireland, 61 N. Y. Supp. 1061, referred to in the opinion of Mr. Justice HATCH, the learned appellate division of the First department, as I read the opinion, assented to the doctrine as to the employment of an architect which we declared in the Savage Case, but placed the reversal of the judgment of nonsuit on the ground that:

"Ireland is not exonerated from liability; it not being shown that he employed a skilled and competent architect, and that he relied upon him both for the preparation of plans and the superintendence and inspection of the work, and that he did not interfere with the architect in the discharge of the duties the latter assumed to perform for the owner. The defendant's position is defective, in that there is nothing in the record to inform us who Mr. Behrens, the architect, was, or whether he was competent, or what education, knowledge, or experience he had, or what his capacity was to deal with so large and important a subject as the planning and erection of this great building for Mr. Ireland. The owner is called upon to show further that he did not control, direct, or interfere with the architect in any manner. It will not suffice to say that Mr. Behrens was a skilled architect because Mr. Ireland considered him such, or the architect represented himself to be such, as by signing the plans; nor is it enough for the defendant to say that he relied upon the approval of the plans by the building department as a certificate of capacity or sufficiency of the architect he employed. For the want of evidence to show that Mr. Ireland could rightfully rely upon the architect he employed, the judgment and order must be reversed."

In the case at bar, I think that all the facts which, according to the opinion of Mr. Justice Patterson, were essential to the defense, were either proved or conceded. This, however, does not entirely dispose of the question whether the building, as planned, was inherently dangerous and defective. It clearly appears that the building which fell was not constructed in accordance with the original plans, and it is no answer to this that even such plans had no sufficient factor of safety. It is not certain that the building would have fallen suddenly, and in the manner in which it did, if it had been erected according to the plans. Juries cannot be permitted to enter the domain of speculation, and render verdicts on a state of facts which never existed. The plans called for a concrete foundation, under column 3, 18 inches in thickness. There was evidence tending to show that Behrens assented to a reduction of the thickness of this concrete to 12 inches, and it seems to be conceded that this was a contributing cause to the collapse. But Behrens had no authority from the defendant to give such consent. It was outside his power, and the act was not that of the defendant, for which he is responsible, unless he knew of it or was privy thereto; and there is no evidence of any such knowledge or privity. On the former appeal the court held that as the contract provided that the work should be done in accordance with the plans and specifications, although it provided that the work should be executed under the direction and to the satisfaction in all respects of Behrens, or other architects of the owner, yet this provision did not authorize the architect to modify the plan, or relieve the contractor from doing the work called for by the contract, and that for

neglect in this respect the defendant was not liable, as such a con-sent of the architect was not within the scope of his employment.

I have not lost sight of the plaintiff's contention that the plans were in violation of the building law. If the building had been erected in exact accordance with these plans, such contention might be taken into consideration, but Behrens' unauthorized change of the original plan takes that question out of the case; for it seems to have been conceded by both parties on the trial, and the trial was conducted on the theory, that the accident resulted from placing a 12-inch concrete foundation for column No. 3 partly on undis-turbed land, and partly on the wall of an old cesspool or cistern, which formed the fulcrum to a lever constituted by the concrete, inasmuch as the undisturbed earth was likely to settle more or less under the great pressure transmitted through the column, while the wall of the cistern afforded greater resistance, and that this greater strain on the part supported by the earth caused a break in the concrete, resulting in the sudden collapse of the structure above it. It is also to be remembered that a witness for the plaintiff (an architect connected with the building department) testified that Behrens' plans were examined by the experts of that department, and approved as plans of a building capable of carrying the loads that would be imposed upon it. Thus, we have this condition shown by the evidence: An architect admitted by the plaintiff's counsel to have been competent and skillful; plans prepared by such architect, and examined and approved by the building department, to which the charter of the city confided that public duty; and testimony from an architect connected with the department to the effect that "if the building had been constructed according to the plans and specifica-tions filed in the department of buildings, and approved by the superintendent of buildings, the building would not have collapsed." Two of the plaintiff's witnesses testified that, if the building had been constructed according to the original plans, it would not have collapsed as and when it did, though it eventually might have "failed" gradually, and that the real cause of the collapse was the laying of the concrete over the cistern. In other words, not the original plans of the architect, but the change from such plans, and the work of the contractors in building, were the causes of the collapse. It would seem that a layman could hardly be expected to possess technical knowledge of what is proper for the construction of a building of this character, and that the defendant was justified in relying upon the judgment of his architect and the approval of the building department, unless it could be said that the plan was so utterly and inherently defective as to be dangerous to the commonest observation; and there is no evidence to support any such proposition. This disposes of the first of the two grounds upon which, as stated by the plaintiff's counsel, the case was submitted to the jury; for the defendant, hav-ing employed an architect who was conceded on the trial to have been competent and skillful, and to whom he committed the entire subject, cannot be held guilty of negligence in contracting for the construc-tion of the building planned by such architect, unless he knew or should have known that it was inherently defective.

464

62 NEW YORK SUPPLEMENT (Sup. Ct.
and 96 New York State Reporter.

There remains the second question, whether the defendant was negligent in failing to use reasonable care to provide a safe bed upon which to rest the foundation of column No. 3. He had made a contract with one Garry, who was to—

"Do all the digging * * * in time so as not to delay the other mechanics, * * * agreeably to the drawings and specifications made by Chas. R. Behrens, Arch't, * * * within the time aforesaid, in a good, workmanlike, and substantial manner, to the satisfaction and under the direction of the said architect."

The defendant's contract with Parker, the builder, provided that:

"No concrete shall be laid in trenches until same has been examined by the architect, as concrete must not be laid on a disturbed bottom. No finished concrete work will be accepted unless same has been approved by the architect before being covered over or built upon."

The testimony of the defendant, taken on the Savage trial, and read on the present trial, was to the effect that he employed Behrens as an architect, and to "superintend the work of all the contractors, * * * both as to construction and material," and that defendant "intrusted the entire management to the architect, * * * of the construction of this building, * * * stipulating that it should be of the best material." On examination by his own counsel, the defendant explained that in using the word "superintend" he gave Behrens no other authority than that of an architect, as specified in the contract. On the former appeal this court did not specifically decide the extent of the responsibility of the defendant for the failure of the architect to supervise the work, and to see that there was undisturbed bottom on which the foundation of column No. 3 was to rest before the concrete work was laid down; but I cannot draw any distinction between that part of the architect's duty and his duty to provide proper plans. If failure on the part of an architect to prepare proper and sufficient plans cannot be imputed to his principal as negligence, by the same reasoning the failure of the architect to see that there was an undisturbed bottom upon which column No. 3 was to rest cannot be imputed to the defendant as negligence. Each duty was confided to Behrens, by reason of his being an architect, and by the same contract. The defendant's undisputed testimony shows that he was a layman, as to matters of this kind, and knew nothing of the defects of building, or of the sustaining weight of concrete or structural erections. Indeed, it may be said that for this reason the profession of architects exists. On the entire evidence, there can be no question that the accident resulted from the negligence either of one or more of the contractors, or of the architect, and for their negligence the defendant is not responsible. In the recent case of Berg v. Parsons, 156 N. Y. 109, 115, 50 N. E. 958, 41 L. R. A. 393, the court had occasion to consider the doctrine of respondeat superior, and, recognizing the general rule to be that "where the relation of master and servant, or principal and agent, does not exist, but an injury results from negligence in the performance of work by a contractor, the party with whom he contracts is not responsible for his negligence or that of his servants," used the following language:

"There are certain exceptional cases where a person employing a contractor is liable, which, briefly stated, are: Where the employer personally interferes

with the work, and the acts performed by him occasion the injury; where the thing contracted to be done is unlawful; where the acts performed create a public nuisance; and where an employer is bound by a statute to do a thing efficiently, and an injury results from its inefficiency."

I think these constitute the only exceptions to the general rule. There is in the case at bar no evidence which brings it within any of these exceptions; for there is no evidence that the defendant did personally interfere with the work, or that the structure was unlawful or a public nuisance, or that the defendant was bound by any statute to erect the building otherwise than in the manner provided for in the original plans.

It is due to the learned judge before whom the trial was had to say that a motion for the dismissal of the complaint was made at the close of the evidence, and that the decision of the question was reserved until after the verdict, on the theory that the case came within the provision of section 1189 of the Code of Civil Procedure. Subsequently to the verdict, in an unreported opinion, which is hereto appended as a note, the court granted the motion for the dismissal of the complaint, but afterwards came to the conclusion that section 1189 was not applicable to cases where, as in the present, a general verdict had been rendered, and thereupon, with the consent of the defendant's counsel, vacated the order dismissing the complaint.

The conclusions stated above render unnecessary the examination of any other question raised on this appeal. I think that the judgment should be reversed.

Note by GARRETTSON, J. I am not satisfied with the result in this case. My submission of the case to the jury was largely against my own judgment as to what disposition ought to have been made of it on the facts, and under the law applicable. As the case was presented to the court after the withdrawal of one of the grounds by Mr. Patterson, there seemed to be but two questions left upon which the liability of this defendant could be predicated; and one of those, I must say, I regard as being of extremely doubtful value. The only one that impressed me with any considerable degree of force at the time was that with reference to the duty of the defendant to see to it that a proper bed was found; that the ground was prepared in such a way that the contractor for the construction of the building could have, when he commenced his work, that which was required and called for by the plans and specifications,—the excavation having been made by an independent contractor. I think that, so far as the plan of construction is concerned, which was the first ground, as to whether there was an inherent defect in the plan, so that it was dangerous to build from the plan, the defendant did all that, under the law, he was required to do, or could be expected to do, when he selected a skillful and competent architect, and when he employed and made his contract with a builder who was reputable and well qualified to perform the particular work. Now, as to the foundation being placed upon an undisturbed bottom, the owner had provided in his plan and specifications, and in the contract, for just that. He had not specified the construction of the building upon anything but an undisturbed bottom, and he had committed the determination of whether that foundation was to be constructed upon an undisturbed bottom to his architect; and, if there was any violation of duty, it was a violation of duty in this regard, by the builder and by the architect, of matters and things which had been completely and entirely committed to their charge, or provided for by the contract, and it seems to me that the defendant could not have done anything more than he did in that regard. It could not be expected of him, under the circumstances, any more than it could be expected of any other owner, to be upon the ground at the time that this work was commenced, and see that it was performed according to the terms of the contract and according to

the terms of the specifications, or any more than that he should examine any other detail of the work, to see whether it was according to the plans and specifications, and provided for by the contract. I was unable to get away from that view of the case on these questions which are presented, and I sent the case to the jury under rules and upon questions which did not strongly impress me, and in respect to which I have some considerable doubt, yet I felt at the time that that was the wisest course to pursue. The case is now in such a position that you can both have the benefit of what is in it. We have the verdict here, and we have the two motions now pending for the nonsuit. If I set aside this verdict and grant the motions, the case goes to the appellate division in such a form that if I am wrong, and the verdict ought to stand, the appellate division can give you the benefit of it, without granting a new trial, and that is the disposition which I will make. I will set aside this verdict, and I will grant both motions,—the motion made at the close of the plaintiff's case, and the motion made at the close of the whole case.