WILLIAM BRENNAN, Respondent, v. GEORGE L. WALKER
COMPANY, Appellant, and JOHN MCDERMOTT,
Defendant.

WILLIAM HUTTON, Respondent, v. GEORGE L. WALKER
COMPANY (a domestic corporation), Appellant.

(Supreme Court, Appellate Term, First Department, January, 1919.)

Contracts — building department of city of New York has no authority
to make rules relating to ceiling construction of buildings —
negligence — subcontracts — evidence.

Plaintiff was in the employ of a master plasterer who had a
subcontract from the defendant to hang a church ceiling and
to plaster its under surface, and while plaintiff and a fellow
workman were doing the plastering, the ceiling fell and both
were injured. *Held,* that as the proof was insufficient to war-
rant a finding that defendant took any part in the perform-
ance of the subcontractor's work other than was necessitated
by the exercise of the right of supervision permitted to a
general contractor, it was erroneous to send that branch of
the case to the jury.

The building department of the city of New York has no
authority to make and promulgate rules relating to ceiling con-
struction of buildings, and a violation of rules intended to
compel such construction of ceilings as would render them
firm and securely hung, is not unlawful.

APPEAL by defendant from judgments of the City
Court of the city of New York, in favor of plaintiff,
entered upon the verdict of a jury, and from orders
denying defendant's motion to set aside the verdict
and for a new trial.

Alfred W. Andrews (Frederick J. Flynn, of counsel),
for appellant.

Armstrong & Keith (John S. Keith, of counsel), for
respondents.

MULLAN, J.   The plaintiff was employed as a workman plasterer by McDermott, a master plasterer, who had a subcontract from the general contractor, the defendant George L. Walker Company.   The building was an addition to a church.   The work undertaken by McDermott, under his contract with the defendant, was the hanging of the ceiling in question, and the plastering of the under surface of the ceiling.   The plaintiff and his fellow-workman Hutton, while engaged in the work of plastering the ceiling, were injured by the ceiling's fall, and both sued the Walker Company and recovered damages for the injuries they sustained, the actions having been tried together.

This court said upon a former appeal (*Brennan* v. *Walker,* 93 Misc. Rep. 57): " It is well established by the authorities that ordinarily a general contractor who sublets part of the work of construction on a building, relinquishing the right of control and direction over the work so sublet, and exercising only such general superintendence as is necessary to see that the subcontractor duly performs his contract, is not liable for any merely negligent acts of the subcontractor, and that mere knowledge that the work is being done in a negligent manner by the subcontractor is not sufficient to charge the general contractor therewith, unless he actually participates in and exercises control and direction over the manner in which the work is done. *Parsan* v. *Johnson,* 208 N. Y. 337.   If, however, the work is done not merely in a negligent manner, but in violation of the law, and the general contractor has knowledge of the violation of the law during the progress of the work, makes no objection, and does nothing to endeavor to cause the work to be performed in a lawful manner, he is liable, as a joint tort feasor, with the subcontractor, for injuries resulting from such violation of law.   ' He is not at liberty to stand

by, with knowledge of the breach of law, and escape liability merely because the actual work is being done by another, whether such be an independent contractor · or an agent for whose doings he would, in general, be responsible.' *Pitcher* v. *Lennon,* 12 App. Div. 356; *Burke* v. *Ireland,* 26 id. 487; *Haenschen* v. *Allison Realty Co. & Roebling Con. Co.,* 124 id. 920; affd., 194 N. Y. 533.''

We are unable to discover the slightest particle of evidence to warrant a finding that the defendant took any part in the performance of McDermott's work other than was necessitated by the exercise of the right of general supervision that is permitted to a general contractor to enable him to insure the performance of work a subcontractor has agreed to do. Indeed, it would be difficult to conceive of a building operation in which the general contractor so clearly kept within the allotted bounds of his purely supervisory power. It was error, therefore, on the part of the learned trial justice to send this branch of the case to the jury.

It remains to consider whether the work was performed in an unlawful manner, to the knowledge of the defendant.

It was proved that the ceiling construction failed to comply, in numerous respects, with certain rules in relation to ceiling construction that had been adopted by the several building departments of the city and which were, if authorized, in force at the time of the accident. In the view we take it is unnecessary to discuss in detail the various features of non-compliance with these rules, or to consider at length the question whether the defendant had any knowledge of the violations. Were we compelled to make a finding upon the latter subject, we should be strongly inclined to say that there was either no proof of such knowl-

edge, or that a finding that the defendant did possess such knowledge was clearly against the weight of evidence. The point is of no materiality, however, for the reason that in our opinion there was no authority residing in the building department heads to make and promulgate the rules referred to.

The rules plainly were intended to compel such construction of ceilings as would render them firm, and securely hung, presumably to prevent the very sort of thing that occurred here. When the case was here upon the prior appeal, the contention had not been made that the building department heads had no power to make the rules in question, and thus that a violation of the rules was not unlawful. It is now urged that the rules are devoid of sanction and authority.

It is conceded by the respondent that unless power to make the rules was conferred by a general state statute upon which he relies (Laws of 1911, chap. 156) there was no express authority for their making. The building code of the city is, strangely enough, silent upon the subject of ceiling construction. The building department heads were without power to supply the deficiency. It was said in *McGuinness* v. *Allison Realty Co.*, 46 Misc. Rep. 8; affd., 111 App. Div. 926, that: " The powers and duties of the borough president and of the superintendent of buildings are entirely administrative. (Id. §§ 406, 408, 409.) They could make rules and regulations to secure the effective enforcement of the provisions of the building code and for the administration of the bureau of buildings, and do all necessary and proper acts for those purposes. Having done this their powers and duties extended no further." See, also, *Lantry* v. *Mede*, 127 App. Div. 557; affd., 194 N. Y. 544.

Turning to the statute of 1911, upon which the respondent's case depends, we find that the act is

entitled "An act to amend the general city law, in relation to the supervision and regulation of plastering in cities of the first class." The first section of the act (which became section 60 of the General City Law) provides: " Supervision of plastering by building department. The building department of every city of the first ·class shall have jurisdiction over all plastering except where it conflicts with the duties of any other department or conflicts with any law conferring on any other department supervision of any portion of plastering. For such purpose, there shall be appointed in each building department　*　*　* sufficient number of inspectors to perform such work as is necessary for the enforcement of this article."

Section 61 provides that all plastering on lath shall be known as three-coat work, namely: scratch, brown and finish. Section 62 provides that all ceilings, stud partitions and furred walls where plastered with lime on wood lath shall have not less than three-eighths space between lath.

Sections 63, 64, 65, 66, and 67 describe the qualities that the first, second and finish coat of plaster must have. Section 68 provides that nothing in this article contained shall affect the tenement house act and the enforcement thereof by the city of New York.

Throughout the act there is not a single reference to the materials or devices that are to be used in the construction of ceilings. The only use in the act of the word " ceiling " appears in section 62, where it is provided that all ceilings where plastered with lime on wood lath shall have not less than three-eighths inch space between lath; but even that provision does not prescribe the character of lath to be employed, or the manner in which the ceiling is to be erected, merely requiring a space between wood lath for the purpose

of covering it with lime plaster. The lath used in the ceiling we are dealing with was metal, not wood. It would seem obvious that if the legislature had intended to cover the important subject of the structural strength of ceilings, it would at least have referred to it in general terms; but neither in detail nor by general provisions was the matter of structure mentioned in the entire act. We think it is plain that the act relates solely to plaster itself, its quality, number of coats, and the manner of its application, and that there was no intention to legislate in relation to the objects to which the plaster is to be applied. While it is unfortunate that such an important branch of building construction is not covered by statutory regulation, it is not our function to supply the omission by judicial legislation. It follows that the complaint must be dismissed.

Judgments and orders reversed, with costs, and complaints dismissed, with costs.

GUY and WEEKS, JJ., concur.

Judgments and orders reversed, with costs.