Argued December 5, 1966, affirmed March 29, 1967

JOHNSON, *Respondent, v.* SALEM TITLE
COMPANY ET AL, Defendants,
and
PAYNE, *Appellant.*
425 P. 2d 519

*Asa L. Lewelling,* Salem, and *Kenneth E. Roberts,* Portland, argued the cause for appellant. With them on the briefs were Ridgway K. Foley, Jr., and Mautz, Souther, Spaulding, Kinsey & Williamson, Portland.

*Douglas L. Hay,* Salem, argued the cause for respondent. With him on the brief was William J. Juza, Salem.

Before Perry, Presiding Justice, and Sloan, Goodwin, Denecke, Holman,* Lusk and Redding, Justices.

GOODWIN, J.

Plaintiff, a pedestrian on a public sidewalk, was injured when a high wind caused a masonry wall to fall on him. He sued the architect, the landowner, the general building contractor, and the masonry contractor. The jury exonerated all the defendants except the architect, and returned a verdict against him. He appeals.

The assignments of error present three principal issues. The first is whether the plaintiff proved negligence on the part of the designers of the building. The second is whether there was a causal connection between the alleged defect in design and the injuries which plaintiff received. The third is whether an architect can avoid liability for faulty design, if it was faulty, by consulting and relying upon an independent engineer. Since the third question need not be considered unless the plaintiff made a jury case on negligence and causation, we turn to those issues first.

■ The plaintiff's only pleading of negligence was that the masonry wall as designed did not comply with a city building ordinance. While there is a conflict in the evidence concerning the velocity of the wind and the conformity of the wall to the city code, all these issues were for the jury unless some reason appears for taking the case from the jury. No such reason has been established.

■■ The architect contends that, whether or not the wall as designed actually met code specifications,

* Holman, J., did not participate in this decision.

it was approved by a city building inspector and the approval of the city's officer is conclusive proof that the wall did meet the requirements of the city ordinance. We are unable to accept such a proposition. If the law requires a certain standard to be met in order to protect the public and that standard is not in fact met, it would make no sense to hold that a building inspector's approval of negligent work could deny relief to injured persons for whose protection the law had been enacted. See, e.g., *Pitcher v. Lennon,* 12 App Div 356, 361, 42 NY Supp 156, 159 (1896). Whether or not the building inspector's approval might estop the city in litigation between the city and an offending property owner is another question, one that is irrelevant in this case.

■ Disregarding, therefore, the inspector's approval, we come to the question whether a wall designed contrary to the requirements of a building code can be found by the jury to have been negligently designed. The trial court instructed the jury that if the wall was not designed so as to comply with the city code such a violation would be negligence. The instruction was a substantially correct statement of the law. There was adequate evidence of statutory negligence. See, on statutory requirements and negligence generally, Note, 45 Or L Rev 156 (1966).

■ The question of causation has been presented here in a number of assignments, but the essence of the defense was that the wind which blew on the day in question (October 12, 1962) was of such unprecedented velocity as to amount to a hurricane, or, in these latitudes, an "act of God." The jury was instructed accordingly, as requested by the defense, but the jury elected to believe that even in the face of such a wind a properly designed and constructed wall would not

have blown down. There was evidence to support the verdict on this issue, and it cannot, therefore, be disturbed.

The final question is the legal effect of the architect's delegation of the design of the wall to an independent consulting engineer. The record does not disclose why the engineer was not made a party defendant, but the evidence is undisputed that the negligent designing of the wall was performed in the engineer's office. The architect, however, relied upon, incorporated into his drawings and specifications, and put his signature upon the work done by the engineer.

■ The general rule is that the employer of an independent contractor is not liable for the contractor's negligence. *Winniford v. MacLeod,* 68 Or 301, 136 P 25 (1913); Prosser, Torts § 70 (3d ed 1964). However, there are significant exceptions to this rule. If the work to be done is "inherently dangerous," the employer is liable for his contractor's negligence. *Loe et ux v. Lenhard et al,* 227 Or 242, 362 P2d 312 (1961); *Bedell et ux. v. Goulter et al.,* 199 Or 344, 261 P2d 842 (1953). Liability is also imposed in a large class of cases in which it is said as a matter of law that an employer's duty cannot be delegated. See, e.g., *Wolsiffer v. Bechill,* 76 Or 516, 146 P 513, 149 P 533 (1915). Plaintiff contends that the architect was under such a nondelegable duty to design the wall in conformity with the building code.

■ Nondelegable duties arise in situations in which the law deems a particular duty "so important and so peremptory that it will be treated as nondelegable * * *. Duties imposed by statute are often found to be of this kind * * *." 2 Harper & James, Torts § 26.11 at 1406 (1956).

This exception to nonliability has been adopted by the American Law Institute:

"One who by statute or by administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions." Restatement (Second), Torts § 424 (1965).

This view of the nondelegability is not new to Oregon. *Ackles v. Pacific Bridge Co.*, 66 Or 110, 133 P 781 (1913).

The question, therefore, is whether an architect is required to comply with the building-code provisions concerning the structural engineering of walls in designing a building. If he is, then he cannot avoid responsibility by subcontracting that part of his work to others.

In 1958, the city council of Salem, by City of Salem Ordinance No. 5123, adopted Volume I of the Uniform Building Code (1958 ed) as its building code. The stated purpose of the code "is to provide minimum standards to safeguard life or limb * * * by regulating and controlling the design * * * of all buildings and structures within the city * * *." 1 Uniform Building Code § 102 (1958). Section 2307 of that code provides that "[b]uildings and structures and every portion thereof shall be designed * * * to resist the wind pressure as specified in this Section * * *." The code does not place the duty of compliance on any particular individual; but the duty obviously rests upon all those who undertake to design such work.

■ The evidence below showed that the architect assumed and was paid for assuming the over-all responsibility for designing the building. He contracted with the owner to provide all the drawings and specifications necessary for the construction of the building. The engineers were strangers to the owner. The building permit was issued upon the architect's plans, and the building was constructed according to those plans. Any engineering work incorporated in the plans became a part of the architect's design. Since the defendant assumed the benefits and burdens of designing the building, he assumed the responsibility of meeting the building-code design provisions, including the structural engineering requirements. His duty to meet the minimum safety standards of the building code was, therefore, nondelegable.

The defendant argues that, as a professional man, the standard of care applicable to him is measured by the practices of the reasonably prudent architect in the same locality. Since it is the custom of architects in Salem to refer engineering work to consulting engineers, he argues, his only obligation was to select a reliable engineering firm. This he did, thereby fulfilling, according to his view, his duty of exercising due care.

■ Defendant's reliance on local customs among his fellow professionals is misplaced. Selecting a competent engineering firm only indicates that the defendant himself was not negligent. It begs the question of vicarious liability. As Prosser says, "the cases of 'non-delegable duty' go further, and hold the employer liable for the negligence of the [independent] contractor, although he has himself done everything that could reasonably be required of him. They are thus

cases of vicarious liability." Prosser, Torts § 70 at 483 (3d ed 1964).

The architect also seeks from *Sprinkle v. Lemley,* 243 Or 521, 414 P2d 797 (1966), relief from vicarious liability. That case noted the general rule that a medical practitioner who calls in a specialist will not be liable for the negligence of the specialist if the two doctors act "independently" or if there is no concert of action between them in treating the patient. See also *Giusti v. Weston Co.,* 165 Or 525, 108 P2d 1010 (1941); *Moulton v. Huckleberry,* 150 Or 538, 46 P2d 589 (1935); Annotation, 85 ALR2d 889 (1962). The *Sprinkle* case held, however, that where the general practitioner and the specialist acted "in concert," each could be liable for negligence. The issue of vicarious liability in that case was left to the jury.

A closer case on the facts to the one at bar is *Scott & Payne v. Potomac Ins. Co.,* 217 Or 323, 341 P2d 1083 (1959). There the architect subcontracted the design of a heating system to a heating engineer. The design proved to be defective and a claim for damages was made against the architect. He settled the claim "out of court" and sought indemnity from his malpractice-insurance carrier. We held that there was evidence of personal negligence on the part of the architect, but we also indicated by way of dictum that even if there had been no such evidence the architect would have been vicariously liable for the negligence of the heating engineer selected by him. The case cites a number of authorities relevant to the case at bar and is the subject of a comment in Drake, *Professional Negligence: Liability of Architects and Engineers,* 2 Ill CLE 85 (July 1964).

In the case at bar the issues of negligence and

causation were decided by the jury upon adequate evidence to support the verdict. The issue of vicarious liability was a question of law upon undisputed facts and was correctly resolved against the claim of independent-contractor immunity.

Affirmed.