Argued January 28, affirmed in part; reversed in part
June 1, 1972

OWINGS ET AL, *Respondents/Cross-Appellants, v.*
ROSE' ET AL, *Appellants/Cross-Respondents.*

497 P2d 1183

*Stewart M. Whipple,* Portland, argued the cause for appellants and cross-respondents. On the briefs were Seitz, Whipple & Johansen.

*Lamar Tooze, Jr.,* Portland, argued the cause for respondents and cross-appellants. With him on the

briefs were Tooze, Kerr & Peterson, Stephen R. Frank, E. Richard Bodyfelt, and Michael J. Gentry.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, and HOWELL, Justices.

McALLISTER, J.

This is an action for indemnity. The plaintiffs are architects, who employed the defendants as consulting engineers on two construction projects and contend that on both jobs they had to pay damages on account of the negligence of defendants in the performance of their engineering services. The jury found for plaintiffs on their first cause of action and defendants appeal. The trial court sustained a demurrer to plaintiffs' second cause of action and plaintiffs cross-appeal.

Plaintiffs' first cause of action arises out of plaintiffs' employment by Omark Industries to design and oversee the construction of a manufacturing plant in Milwaukie. The new plant was to replace older buildings in which Omark had carried on its manufacturing business. The floors in the old buildings were cracked, eroded, uneven in spots, and highly unsatisfactory. Omark emphasized to plaintiffs its need for a "superior floor" in the new plant.

Plaintiffs had no structural engineers on their staff and hired defendants, who are structural engineers, as consultants on the Omark job. Defendants were responsible for designing the floor as well as the other structural parts of the building. Defendants inspected Omark's older plants and were made fully aware of Omark's desire to have a "superior floor" in its new plant and the reasons therefor.

Plaintiffs designed a building with a floor area

of approximately 350 feet by 390 feet. Defendants' Mr. Breedlove designed the concrete floor of the new plant. The floor he designed consisted generally of slabs or panels of concrete six inches thick and thirty feet square. The concrete slabs were reinforced by one-half inch steel bars placed twelve inches apart running both ways through the slabs. Each slab was joined to the adjacent slabs by "Keycold" joints, which are designed to prevent vertical displacement of the slabs. Through these joints the reinforcing bars each extended twelve inches into the adjoining slabs.

About the time Omark moved into the new building cracks began to appear in the floor and soon thereafter the floor surface began to erode. The cracking and erosion soon became serious and the floor continued to deteriorate. The cracks were large enough to interfere with Omark's production and in the movement of machinery and materials throughout the plant.

Omark sued the architects, the general contractor, and the testing laboratory which it had hired to test the quality of the concrete. The damages claimed by Omark totaled $344,296. The action was settled for $145,000, of which the architects, plaintiffs in this case, contributed $108,200. Plaintiffs then sought indemnity from defendants for the amount plaintiffs contributed to the settlement plus their other costs incurred in defending against Omark's claim, totaling $125,659.24. Plaintiffs alleged that the excessive cracking and deterioration of the floor was caused by the negligence of defendants in designing the floor. Defendants denied that they were negligent and alleged that the negligence of plaintiffs contributed to the defective floor.

The ingredients of a successful action for indem-

nity were stated in *Fulton Ins. Co. v. White Motor Corp.,* 261 Or 206, 493 P2d 138, 140-141 (1972) as follows:

> "In an action for indemnity, the claimant must plead and prove that (1) he has discharged a legal obligation owed to a third party; (2) the defendant was also liable to the third party; and (3) as between the claimant and the defendant, the obligation ought to be discharged by the latter. Restatement, Restitution § 76, 331 (1937); Nelson v. Sponberg, 51 Wash2d 371, 318 P2d 951, 954 (1957); Aetna Freight Lines, Inc. v. R. C. Tway Company, 352 SW2d 372, 373 (Ky App 1961). The last requirement means that, although the claimant must have been legally liable to the injured third party, his liability must have been 'secondary' or his fault merely 'passive,' while that of the defendant must have been 'active' or 'primary.' Kennedy v. Colt, 216 Or 647, 653-654, 339 P2d 450 (1959); Astoria v. Astoria & Columbia River R. Co., 67 Or 538, 547-548, 136 P 645, 49 LRA NS 404 (1913); Jackson v. Associated Dry Goods Corp., 13 NY2d 112, 192 NE2d 167, 169 (1963); Bush Term. Bldgs. v. Luckenbach S. S. Co., 9 NY2d 426, 174 NE2d 516, 517-518 (1961). * * *"

In *Fulton,* supra, we referred to the discussion of indemnity in *General Insurance Co. v. P. S. Lord,* 258 Or 332, 482 P2d 709 (1971) and said that "the traditional formulations of active and passive negligence, or primary and secondary liability, do not provide precise guidelines for deciding close cases". We think those guidelines are still useful, however, in deciding whether a plaintiff's liability is based on conduct which ought to bar his recovery. 493 P2d at 141.

Defendants first assign as error the trial court's denial of their motion for nonsuit and their motion for a directed verdict. The grounds for both motions

were: (1) No evidence of defendants' negligence; (2) no evidence that any negligence of defendants was a proximate cause of the damage; (3) that plaintiffs were contributorily negligent as a matter of law; (4) that plaintiffs failed to prove that the settlement was either necessary or reasonable.

Whether defendants were negligent and whether that negligence was a proximate cause of the defective floor were clearly questions for the jury. Defendants do not seriously contend otherwise. For example, plaintiffs' expert Merrifield testified that the basic cause for the cracking in this case was the use of the continuously reinforced joint between the adjoining slabs. Another expert, Barneyback, testified that the cause of cracking in concrete is restraint of contraction during the drying or curing process. Of the Omark floor Mr. Barneyback said:

> "You have a slab all tied together in one piece which can't move, and when it shrinks, it can't do anything but crack."

Defendants' primary contention is that plaintiffs were also negligent and as active tortfeasors are barred from recovery of indemnity. They argue first that unless plaintiffs were negligent they were not liable to Omark and acted as volunteers in settling Omark's claim and thus are not entitled to indemnity. They next contend that there were other causes of the defective floor besides the design, that plaintiffs' negligence contributed to those other causes and consequently plaintiffs are not entitled to indemnity.

■ Under the evidence in this case the jury could properly find that plaintiffs were liable to Omark without also finding that any active negligence of plaintiffs contributed to the defective floor. In their

contract with Omark plaintiffs agreed to render all architectural and engineering services necessary in the design of the new plant and were thus obligated to furnish Omark with engineering service of reasonable quality. Omark sued plaintiffs for a careless performance of the duty owing by plaintiffs under that contract. A finding that plaintiffs were liable to Omark did not require a finding that plaintiffs were personally negligent in the design of the floor, only that the engineering services were defective and that, as a consequence, the plaintiffs were vicariously liable.

In *Scott and Payne v. Potomac Ins. Co.*, 217 Or 323, 341 P2d 1083 (1959) we held that an architect may be personally negligent even though he relies on the advice of a consulting engineer. We did not, however, hold that he is negligent in every such case. In the present case, there was evidence from which the jury could find that plaintiffs were entitled to rely on the judgment of the defendants. Mr. Martin, who was in charge of the Omark job for plaintiffs, testified that plaintiffs had no structural engineering experts or concrete experts on their staff and that in fact they relied on defendants' judgment in the design of the floor. He testified:

> "The architect is not competent, just within his training to design structurally the type of building in which we act as architects—we are not competent to do the electrical engineering either, nor the mechanical engineering, nor the soil analyses. That is why we hire consultants."

He also testified that he was not advised by defendants that their floor design presented any special risks or problems.

Mr. Breedlove testified that the structural engineer designs the floor system, and has the responsi-

bility for the structure's integrity, including its load-bearing capacity. Strength, he testified, is an engineering decision. Both he and Mr. Rose' testified that under their contract with plaintiffs, defendants had the primary responsibility for the structural aspects of the building, including the floor. Mr. Rose' testified that the technical questions regarding the floor were entirely a structural problem, and that he knew plaintiffs relied on defendants' "leadership and advice" on the structural problems.

■ The jury could find, based on the above evidence, that plaintiffs were not negligent in relying on defendants, whom they hired as experts to deal with the structural aspects of the building.

■ The relationship of defendants to plaintiffs is described in their contract as consultants and we need attempt no more precise classification. We are convinced, however, that defendants were not independent contractors.①

■ The question of plaintiffs' contributory negligence as to other factors which may have contributed to the cracking was clearly a jury question. There was evidence that concrete has a tendency to crack because it shrinks as it dries and that anything which increases the amount of shrinkage or retards the contraction of the drying concrete can contribute to cracking. Among

---

① Defendants argue that if plaintiffs were liable to Omark for defects in the floor which were caused by defendants' negligence, that liability was based on a "non-delegable" duty and that plaintiffs, therefore, should not be allowed to recover indemnity. In Johnson v. Salem Title Company, 246 Or 409, 425 P2d 519 (1967) we held that an architect had a non-delegable duty to design a building in conformity with the safety requirements of the city building code. In that case we assumed, but did not hold, that the consulting engineer who had actually designed the de-

the contributing factors according to defendants were: Addition of too much water to the mix, rough or irregular subgrade, high water table in the subgrade, use of a plastic moisture barrier between the concrete and the subgrade, driving heavy equipment over the floor too soon, and excessive "jitter-bugging", a finishing process which tends to drive the heavier aggregates to the bottom of the slab and the fine materials to the surface.

The evidence was not conclusive that any of these factors was a cause of the excessive cracking. Some of them, such as the use of the plastic moisture barrier, were directly attributable to plaintiffs. Others were matters under the control of the contractor or the testing laboratory, both of whom were hired by Omark. Plaintiffs could have been responsible for some of the factors only if they were negligent in exercising supervision. The jury heard evidence of the extent of plaintiffs' supervision on the job, and listened to the many expert opinions about what did or could have contributed to the excessive cracking. Whether the cracking was excessive solely because of defendants' design, or whether any other contributing factors

fective wall was an independent contractor and that the architect, his employer, would not normally be liable for his torts. Nevertheless, the architect was held liable in that case because his duty to design safely was held to be non-delegable. The applicability of the *Johnson* rationale in this case is questionable on other grounds: *Johnson* was concerned with whether the architect could avoid all liability, not whether his liability could be ultimately shifted to a negligent consultant in an indemnity action; the decision turned on the safety requirements of a building code, while here there is no contention that the floor was structurally unsafe or in violation of any applicable code requirements. However, we do not reach these questions in this case because we believe defendants' assumption that they were independent contractors is unjustified.

were or were not plaintiffs' fault, were questions of fact.

■ Defendants also contend that the case should not have gone to the jury because plaintiffs failed to prove that the amount they paid Omark in settlement was reasonable. There was evidence that it would cost $184,000 to repair and resurface the floor, which figure did not include any of Omark's own costs associated with the job, such as moving machinery and shut-downs. There was also evidence that settlement nego-tiations extended over several months, that depositions had been taken and the facts investigated, and that all the parties were represented by counsel. Defendants contend that because of the complexity of the case, ex-pert evidence of reasonableness was necessary. They cite no direct authority (*Martinique Shoes, Inc. v. New York Prog. W. Heel Co.*, 207 Pa Super 404, 217 A2d 781 (1966), upon which they rely, is not in point. It holds that the mere opinion of counsel that a settlement was reasonable is not sufficient evidence of liability.). Plaintiffs cite cases which hold or intimate that the fact that a settlement was paid is some evidence that the amount was reasonable.[9] In this case there is not merely the fact that a settlement was paid. It is clear that the agreement was reached after extensive arm's-length negotiation, and that the amount of the settle-ment was far less than Omark's potential costs. This is enough to permit the jury to find that all or a part of the settlement was reasonable.

■■ Defendants assign as error the trial court's fail-ure to give a number of instructions concerning the

---

[9] Fidelity and Deposit Co. of Maryland v. Whitson, 187 Cal App 2d 751, 10 Cal Rptr 6, 10 (1960); Lamb v. Belt Casualty Co., 3 Cal App 2d 624, 40 P2d 311, 314 (1935); Burns v. Pennsylvania Rubber & Supply Co., 117 Ohio App 12, 189 NE2d 645 (1961).

plaintiffs' burden of showing the cause of the damage. Three of the requested instructions include the statement that plaintiffs were required to prove that defendants' negligence was the *sole* proximate cause of Omark's damages. These instructions would have told the jury that plaintiffs could not recover if anything other than defendants' negligence contributed to the damage, whether or not plaintiffs were at fault. These instructions go too far. In negligence cases, the contributing negligence of a third party is no defense. *Hills v. McGillvrey,* 240 Or 476, 483, 402 P2d 722 (1965). The jury was instructed on the effect of plaintiffs' own negligence, if any. Defendants were not entitled to an instruction that plaintiffs must prove there were no other contributing causes.

■ Defendants also complain that the jury was not instructed that plaintiffs must prove they were in fact liable to Omark. Although there was no direct instruction to that effect, the jury was told that plaintiffs had to prove they owed a duty to Omark to design an adequate floor, and that the floor, as designed by defendants, was defective. Defendants' requested instructions that plaintiffs must prove their liability to Omark are those which also erroneously state that defendants' negligence must be the sole cause of the damage. The trial court is not obliged to give an incorrect instruction, or to give the correct portions of one which includes errors. *Brooks v. Bergholm,* 256 Or 1, 9, 470 P2d 154 (1970); *Schultz, Executrix v. Shirley,* 189 Or 363, 368-369, 220 P2d 86 (1950).

■ One of defendants' requested instructions was to the effect that the jury should not guess or speculate among several possible causes of the damage. This matter was adequately covered by the court's instruc-

tions that the decision was not to be based on guesswork, conjecture or speculation, and that if the evidence is equally balanced on any question, that question must be decided against the person having the burden of proof. Defendants' remaining contentions require no further comment.

We turn next to the cross-appeal. The second cause of action alleged that plaintiffs hired defendants to perform engineering services in connection with the construction of two buildings at Oregon Technical Institute in Klamath Falls, that pursuant to the employment defendants furnished designs for the "roofs and structures" of those buildings, and that defendants were negligent in several particulars resulting in defects in the buildings. As a consequence, plaintiffs alleged, it was necessary to relocate the drains on the roofs at a cost of $15,641, which was paid by plaintiffs and which sum was "reasonable in amount and necessity."

The trial court sustained a demurrer to plaintiffs' second cause of action, on the ground that it was barred by the statute of limitations. Plaintiffs elected to stand on their pleading; a judgment was entered for defendants on the second cause of action, and plaintiffs cross-appeal from that judgment.

We consider first a contention raised by defendants for the first time on appeal that this portion of the complaint failed to state a cause of action. Defendants point out that there is no allegation that plaintiffs had been hired to design the Oregon Tech buildings or that plaintiffs had any other relationship or duty with respect to the buildings. Defendants argue that there are no facts alleged from which it can be inferred that plaintiffs were liable for any defects in the buildings.

Defendants insist that for all that appears plaintiffs may have made the alleged payment as volunteers.

■■■ In passing on the sufficiency of a complaint challenged for the first time on appeal we are committed to a liberal construction in favor of the plaintiff so that the complaint will be upheld if possible. *Fulton Ins. Co. v. White Motor Corp.,* supra, and cases there cited. Considered in that light, we think the objection that the complaint does not allege plaintiffs' relationship to the buildings is a pure legalism. The complaint alleges that plaintiffs are architects, that defendants are consulting engineers, and that plaintiffs hired defendants to provide engineering services for the design of the Oregon Tech buildings pursuant to a contract, a copy of which is attached to the complaint. If defendants were consulting with plaintiffs in the design of the buildings they must have been aware that plaintiffs had been engaged as architects to design the buildings. If defendants needed more specific information concerning the capacity in which plaintiffs were acting, they could have moved to make the complaint more definite and certain.

■ As to the failure of the complaint to allege why plaintiffs were required to pay for repairing the defective roof, we think defendants cannot complain for the first time on appeal. The complaint alleges that the payment was "reasonable in amount and necessity." It alleges in effect that plaintiffs were obligated to pay for relocating the drains. If defendants needed to know why plaintiffs were so obligated they could have moved to make the complaint more definite in this particular also. We think the second cause of action states sufficient facts when challenged for the first time on appeal.

We turn to the statute of limitations question, which was the subject of the demurrer in the trial court.

■ The action was filed more than two years, but less than six years, after the alleged date of payment for correcting the defects. The parties agree that the date of payment is when the statute starts to run on an indemnity claim. Defendants argue that a common-law indemnity action sounds in tort and is governed by ORS 12.110 (1):

> "An action for * * * any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years; * * *."

Plaintiffs contend that the action is based on a theory of implied contract and is governed by ORS 12.080, which reads:

> "(1) An action upon a contract or liability, express or implied, * * *
> shall be commenced within six years."

The authorities support plaintiffs' position. Plaintiffs cite *Liberty Mut. Ins. Co. v. Societe Coiffure,* 50 NYS2d 40, 41-42 (1944); *Smith v. Smucker,* 198 Misc 944, 100 NYS2d 35, 38-39 (1950). The following modern cases also hold that the contract statute of limitations, rather than the tort statute, applies to an action for common-law indemnity: *Stephenson v. Duriron Company,* 292 FS 66 (SD Ohio 1968); *American Insurance Group v. McCowin,* 7 Ohio App 2d 62, 218 NE2d 746 (1966); *Klatt v. Commonwealth Edison Company,* 55 Ill App 2d 120, 204 NE2d 319 (1964) rev'd in part on other grounds, 33 Ill 2d 481, 211 NE2d 720 (1965). See, also, *Sharp v. Massey-Ferguson, Inc.,* 153 S2d 508 (La App 1963) (statute of limitations applying to quasi-contract, rather than that governing actions for contribution for

tort, governs indemnity action) ; *Sam Kraus Company v. State Highway Commission (Mo)*, 416 SW2d 639 (1967) (general contract statute of limitations, rather than statute governing contracts in writing for the payment of money, applied to action for indemnity). The Restatement on Restitution provides that an action of contract, rather than tort, is appropriate to recover payment by way of restitution. Restatement, Restitution 22 § 5.

■ This court has classified a common-law action for indemnity as an action on an implied contract. *Kennedy v. Colt*, 216 Or 647, 653-654, 399 P2d 450 (1959). The implied promise is a fiction created by the law courts in order to provide a remedy previously available only in equity. *Case v. McKinnis*, 107 Or 223, 256, 213 P 422 (1923) ; *Durbin v. Kuney & Sayres*, 19 Or 71, 73 (1890). It is true that an indemnitor's liability is not consensual, but is imposed by the courts on equitable principles. In modern terms, the indemnitee's right is "quasi-contractual." Restatement, Restitution 9 ; Woodward, The Law of Quasi-Contracts 6-7, § 4.

In *So. Pac. Co. v. Morrison-Knudsen Co.*, 216 Or 398, 338 P2d 665 (1959) the court was considering an express contract of indemnity. It was argued that conduct by the claimant barred recovery of indemnity. The court said that the doctrine of *pari delicto* had no general application in an action based on a contract, and distinguished between actions based on contract and those based on common law principles. In making this point the court said:

> "When a contractual theory is employed to effectuate recovery, the common-law tort doctrines of contribution and indemnity are abrogated or superseded for the purpose of determining liability, although the contractual claim arises out of a lia-

bility flowing from the indemnitee's negligent conduct." 216 Or at 408.

Defendants claim, relying on this case, that the common-law action for indemnity is based on tort rather than contract. Considering the context in which the court spoke of the common-law "tort doctrine" of indemnity, we do not believe it was intended to reject the traditional characterization of an indemnity action as based on an implied contract. The court was simply pointing out that where the parties have made an express contract of indemnity its terms will control.

The court held, in *Bales for Food v. Poole,* 246 Or 253, 424 P2d 892 (1967) that an action against a professional engineer for malpractice sounded in tort, even though the duty to render professional services arose out of a contract between the parties. *Bales* was a direct action against the engineer by the injured party; it does not hold that an indemnity action sounds in tort.

Although it may be incongruous to require a tort action to be brought within two years and permit an indemnity action based on essentially the same facts to be brought at any time within six years after payment on the tort claim, the theory that indemnity is based on an implied contract is well established. As the legislature, in the statute of limitations, specifically provided for implied contracts, we think the statute should be held to cover indemnity actions.

We hold that the court erred in sustaining the demurrer to the second cause of action.

The judgment from the first cause of action is affirmed. The judgment on the second cause of action is reversed and remanded.