**DAVIDSON LUMBER SALES, INC.,**
Plaintiff and Appellee,

v.

**BONNEVILLE INVESTMENT, INC.; Estate of Leonard M. Sproul, by and through Elaine M. Sproul, as personal representative of the Estate; and John Does 1 through 50 inclusive, Defendants and Appellants.**

No. 870086.

Supreme Court of Utah.

May 29, 1990.

L. Rich Humphreys, M. Douglas Bayly, Salt Lake City, for plaintiff and appellee.

Roy G. Haslam, Paul D. Veasy, Salt Lake City, for defendants and appellants.

STEWART, Justice:

After settling a suit against it for the sale of a defective product, Davidson Lumber Sales, Inc., filed suit against Bonneville Investment, Inc., and the estate of Leonard M. Sproul, to recoup the damages that Davidson had paid to settle the first suit. In the instant case, Davidson alleged claims for negligence, breach of implied warranties, indemnity, and contribution against the defendants. The trial court denied the defendants' motion for summary judgment based on Utah Code Ann. § 70A–2–725. We granted the defendants' petition for an interlocutory appeal. We affirm the trial court, but on different grounds.

## I. FACTS

Bonneville designed and constructed a laminated wood beam and, on April 29, 1976, sold it to Davidson Lumber. Approximately two months after the sale, Davidson sold the beam to Quality Construction. The beam was eventually installed by Abrams Construction Co. in a building in Las Vegas, Nevada. The owner of the building leased the building to Thrifty Corporation for the operation of a drugstore.

On October 20, 1978, the roof of the building collapsed, causing property damage in excess of $80,000 to Thrifty's drugstore and its contents. On May 21, 1979, Thrifty filed suit in California against several parties, including Davidson. Against Davidson, Thrifty's lawsuit alleged claims for relief based on strict liability in tort, breach of implied warranties of merchantability and fitness for a particular purpose, and negligence. The suit sought damages for the loss of inventory, fixtures, and equipment, for lost profits, and for the costs of repair, salvage, and cleanup. Thrifty did not seek damages for replacement of the beam, since the building belonged to the lessor.

On February 18, 1981, Davidson filed a cross-claim against Bonneville in the California action, but it was dismissed July 28, 1982, because of lack of personal jurisdiction over Bonneville. On August 4, 1982, Davidson sent a letter to Sproul as president of Bonneville, asking Bonneville to defend the California suit against Davidson, but Bonneville declined to defend. On November 16, 1983, Davidson settled Thrifty's claims for $45,000.

Prior to the settlement, on July 26, 1983, Davidson filed the instant action in Salt Lake County against Bonneville and Sproul. Davidson alleged claims against Bonneville for negligence in the construction and design of the wood beam, breach of the implied warranties of merchantability and fitness for a particular purpose, indemnity, and contribution. Davidson also alleged claims against the estate of Sproul and the other officers and directors of Bonneville for liquidating Bonneville Investment, Inc., without the payment of all known debts pursuant to Utah Code Ann. § 16–10–44 (1987). Davidson's suit against Bonneville and Sproul was filed more than seven years after Davidson purchased the beam from Bonneville.

Bonneville and Sproul moved for summary judgment on the ground that Davidson's claims were barred by the statutes of limitation in Utah Code Ann. § 78–12–23(2) and § 78–12–25(2) (1987). That motion was denied. Bonneville and Sproul again moved for summary judgment against Davidson on the ground that Davidson's claims were barred by the Uniform Commercial Code's ("U.C.C.") statute of limitations found in Utah Code Ann. § 70A–2–725 (1980).[1] The trial court ruled that § 2–725, if constitutional, would bar the action under *Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214 (Utah 1984), but that § 2–725 was unconstitutional under *Berry v. Beech Aircraft Corp.*, 717 P.2d 670 (Utah 1985). The court therefore denied defendants' motion for summary judgment. We granted a petition for an interlocutory appeal.

Defendants contend that the four-year limitations period in § 2–725 controls this case under *Perry* and requires a reversal of the trial court's denial of their motion

---

1. The Utah version of the U.C.C. may also be found in the Utah Code in title 70A with chapter and section numbers that correspond to the U.C.C. article and section numbers.

for summary judgment against Davidson. Davidson counters with two arguments. First, Davidson contends that § 2–725 was designed only to bar U.C.C. contract claims and not the types of claims asserted in this case. Second, Davidson argues that, even if it is wrong on the first point, *Berry v. Beech Aircraft Corp.*, makes application of the statute of repose in § 2–725 unconstitutional in this case.[2] *Berry v. Beech Aircraft Corp.*, held that a products liability statute of repose was unconstitutional under the open courts provision of the Utah Constitution. Utah Const. art. I, § 11. We need not, however, reach the question of whether § 2–725 would be unconstitutional on the facts of this case under *Berry v. Beech Aircraft Corp.* unless and until we first decide that § 2–725 is applicable to this case.

## II. THE SCOPE OF U.C.C. § 2–725

The first question is whether the trial court erred in holding that § 2–725 applies to Davidson's claims against Bonneville and Sproul. Since the issue is solely an issue of law, we do not defer to the trial court's rulings. *Madsen v. Borthick,* 769 P.2d 245, 247 (Utah 1988); *Asay v. Watkins,* 751 P.2d 1135, 1136 (Utah 1988).

### A. *Perry v. Pioneer Wholesale Supply Co.*

At first blush, *Perry v. Pioneer Wholesale Supply Co.,* 681 P.2d 214 (Utah 1984), seems to require the conclusion that the four-year statute of repose in § 2–725 governs this case. That case held that § 2–725 applies to indemnity actions which grow out of an underlying U.C.C. contract or warranty action. *Perry* is, however, distinguishable. In *Perry,* the manufacturer sold defective doors to Pioneer, a wholesale supply company, who in turn sold them to Perry, a subcontractor. Perry installed the doors as part of its subcontract on a build-

ing project. The general contractor rejected the doors and covered by purchasing replacement doors. The general contractor then sued Perry, and Perry filed a third-party complaint against the wholesaler and the manufacturer for breach of warranty.

The general contractor's action against Perry was based on delivery of nonconforming goods and sought only a contract measure of damages based on the delivery of defective doors. This Court held that § 2–725 governed Perry's third-party complaint and that Perry had four years from the tender of delivery of defective goods to bring its action against the wholesaler and the manufacturer for breach of warranty.[3] *Perry,* 681 P.2d at 217. The Court stated that the "limitation period specified in the Uniform Commercial Code conflicts with the general limitations rule for indemnity actions.... By its terms, this provision [§ 2–725] appears to override the general rule regarding indemnity actions." *Perry,* 681 P.2d at 218.

In the present case, the trial court applied *Perry* and held that Davidson's indemnity claims were barred by § 2–725. The trial court then held that provision unconstitutional as applied.

Davidson's action against Bonneville and Sproul grew out of a prior lawsuit in which Thrifty Corporation sued Davidson. Thrifty, however, was not the purchaser of the beam; rather, it was the lessee of the premises where the beam was installed. Thrifty sued for the damages that the collapse of the beam caused to its personal property and its business. Thus, the damages it sought were not for breach of contract or breach of a U.C.C. warranty, but for the commission of a tort.

The issue in this case is whether § 2–725 applies only to actions for economic or breach of contract damages or whether it also applies to tort actions.

---

**2.** We call § 2–725 a statute of repose because the limitations period begins to run when the "breach of warranty," i.e., delivery of the product, occurs and not when damages are incurred. § 2–725(2). *See Berry v. Beech Aircraft Corp.,* 717 P.2d at 672; *Perry,* 681 P.2d at 218–19. The statute is often called a statute of limitations, however, even though it commences to run at a time other than when damage occurs.

**3.** The Court in *Perry* assumed that the third-party action was in fact an indemnity action. 681 P.2d at 217.

## B. Application of § 2-725

The U.C.C. limitations period for breach of contract and warranty cases is four years from the date of the breach of contract or four years from the tender of delivery for a breach of warranty. § 2-725. That section provides in relevant part:

(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

### 1. Negligence claims

■ Since § 2-725 applies only to "an action for breach of any contract for sale," it does not apply to tort actions and does not, therefore, apply to any of Davidson's claims for relief insofar as they are claims based on tort. In short, it does not apply to Davidson's claims against Bonneville and Sproul that are based on negligence. Since contribution in this context is also a tort concept, it is likewise not subject to § 2-725. *See* Utah Code Ann. § 78-27-40 (1987).

### 2. Warranty claims

Whether § 2-725 applies to a breach of warranty action should be decided by the nature of the action and not by the pleading labels chosen. *Reese v. Qualtrough,* 48 Utah 23, 33, 156 P. 955, 959 (1916). *See Heavner v. Uniroyal, Inc.,* 63 N.J. 130, 145, 305 A.2d 412, 420 (1973); *McCarthy v. Bristol Laboratories,* 86 A.D.2d 279, 282, 449 N.Y.S.2d 280, 283 (App.Div.1982). *See also Perry,* 681 P.2d at 217. Whether Davidson's claims for breach of the implied warranties of merchantability and fitness for a particular purpose are actions for "breach of any contract of sale" within the meaning of that term in § 2-725 or are tort actions is the issue we must now address. It is here that terminology tends to become slippery and legal concepts blurred.

The term "implied warranty" is used in at least two different ways in modern legal parlance. It has been used to denote a contract-type action, and it has also been used to denote a tort-type action. Each action has its own history and set of rules which governs its application.

The U.C.C., as initially written, used the term "warranty" to mean a contract-based action. *Heavner,* 63 N.J. at 151-52, 305 A.2d at 423. The U.C.C. provides for three specific types of warranties: express warranties, implied warranties of merchantability, and implied warranties of fitness for a particular purpose. *See* §§ 2-313, 2-314, 2-315.

The term "warranty" has also been used, however, in tort law to have a meaning that is synonymous with strict liability. *See, e.g., Victorson v. Bock Laundry Machine Co.,* 37 N.Y.2d 395, 335 N.E.2d 275, 373 N.Y.S.2d 39 (1975); *Parish v. B.F. Goodrich Co.,* 395 Mich. 271, 280, 235 N.W.2d 570, 573 (1975); *Heavner,* 63 N.J. at 146-51, 305 A.2d at 421-23. The U.C.C. was drafted before the judicial revolution giving rise to the expansion of strict liability had really occurred, and hence the Code failed to take that development into account. *Heavner,* 63 N.J. at 152, 305 A.2d at 424. Tort actions, whether called breach of warranty or strict liability actions, developed outside the confines of the U.C.C. and evolved into somewhat broader actions than those that developed under the U.C.C.; nevertheless, there is some overlap.

The common law development of strict product liability law led to the drafting of § 402A of the *Restatement (Second) of Torts* (1965), which is entitled "Special liability of seller of product for physical harm to user or consumer" and specifies that in certain circumstances "[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer or

to his property is subject to liabiltiy for physical harm therefore caused to the ultimate user or consumer, or to his property...." [4] The comments to § 402A state the intent of the rule and explain the different history of tort and contract "warranty" actions:

> In order for the rule stated in this Section to apply, it is not necessary that the ultimate user or consumer have acquired the property directly from the seller, although the rule applies equally if he does so.... The liability stated is one in tort, and does not require any contractual relation, or privity of contract, between the plaintiff and the defendant.

*Id.*, comment 1. Comment m states:

> A number of courts, seeking a theoretical basis for the liability, have resorted to a "warranty," either running with the goods sold, by analogy to covenants running with the land, or made directly to the consumer without contract. In some instances, this theory has proved to be an unfortunate one. Although warranty was in its origin a matter of tort liability, and it is generally agreed that a tort action will still lie for its breach, it has become so identified in practice with a contract of sale between the plaintiff and the defendant that the warranty theory has become something of an obstacle to the recognition of the strict liability where there is no such contract. There is nothing in this Section which would prevent any court from treating the rule stated as a matter of "warranty" to the user or consumer. But if this is done, *it should be recognized and understood that the "warranty" is a very different kind of warranty from those usually found in the sale of goods, and that it is not subject to the various contract rules which have grown up to surround such sales.*

> ... The rule stated in this Section is not governed by the provisions of the Uniform Sales Act, or those of the Uniform Commercial Code, as to warranties; and it is not affected by limitations on the scope and content of warranties....

(Emphasis added.) There is, however, a similarity between strict tort liability and liability under the U.C.C. on implied warranties. Each type of liability can give rise to damages for both personal injuries and for personal property damage. Thus, U.C.C. § 2–715(2) defines "consequential damages," which may arise from a seller's breach of warranty, to include personal injury damages, as well as property damages.[5] Nevertheless, under this provision, recovery for personal injury and property damage is dependent on a breach of warranty arising in connection with the sale of a product pursuant to a U.C.C. contract of sale.

Given the somewhat parallel development and history of strict liability law and U.C.C. warranties and the occasional tendency to use the term "warranty" to designate both contract and tort actions, it is not surprising that the courts have not been altogether uniform as to what actions § 2–725 controls. *See generally* Annotation, *Construction and Effect of U.C.C. Art. 2, Dealing With Sales,* 17 A.L.R.3d 1010, § 60(b) (1968 & Supp.1989). In general, three different positions have been taken by the courts with respect to whether § 2–725 applies to actions for personal injuries and damages to property arising from a defective product. *See Wieser v. Firestone Tire & Rubber Co.,* 596 F.Supp. 1473, 1475 (D.Colo.1984); *Johnson v. Hockessin Tractor, Inc.,* 420 A.2d 154, 157–58 (Del.1980). *See generally* Annotation, *What Statute of Limitations Applies to Actions for Personal Injuries Based on Breach of Implied Warranty Under*

---

**4.** Section 402A of the *Restatement (Second) of Torts* (1965) was adopted by this state in *Ernest W. Hahn, Inc. v. Armco Steel Co.,* 601 P.2d 152 (Utah 1979).

**5.** U.C.C. § 2–715(2) states:
Consequential damages resulting from the seller's breach include

(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) injury to person or property proximately resulting from any breach of warranty.

*U.C.C. Provisions Governing Sales (U.C.C. § 2–725(1)),* 20 A.L.R. 4th 915 (1983).

The first position, which is said to be the majority view, applies § 2–725 to "all actions for breach of warrant[y], regardless of whether the plaintiff seeks personal injury damages or economic and contractual damages." *Wieser,* 596 F.Supp. at 1475. *See Reid v. Volkswagen of America, Inc.,* 512 F.2d 1294, 1297 (6th Cir.1975); *Johnson,* 420 A.2d at 157. Under this view, it makes no difference whether the warranty action is an action in contract or tort.

A second view holds that the type of damages sought in an action determines whether the statute of limitations in § 2–725 applies. Actions for personal injury damages or tortious injury to personal property are governed by general, non-U.C.C. limitations periods, while actions for economic or breach of contract damages are governed by § 2–725. *See, e.g., Maynard v. General Elec. Co.,* 486 F.2d 538 (4th Cir.1973); *Natale v. Upjohn Co.,* 356 F.2d 590 (3d Cir.1966); *Grey v. Bradford–White Corp.,* 581 F.Supp. 725 (D.Kan. 1984); *Becker v. Volkswagen of America, Inc.,* 52 Cal.App.3d 794, 125 Cal.Rptr. 326 (1975); *Wilbur Waggoner Equip. v. Clark Equip.,* 668 S.W.2d 601 (Mo.Ct.App.1984); *Heavner v. Uniroyal, Inc.,* 63 N.J. 130, 305 A.2d 412 (1973).

A third view applies § 2–725 only when there is privity between the parties. *See, e.g., United States Fidelity & Guar. Co. v. Truck & Concrete Equip. Co.,* 21 Ohio St.2d 244, 257 N.E.2d 380 (1970); *Plouffe v. Goodyear Tire & Rubber Co.,* 118 R.I. 288, 373 A.2d 492 (1977).

■ In our view, the language of § 2–725 and the expressed intent of the drafters of the U.C.C. support the view that § 2–725 applies only to actions in which economic or breach of contract damages are sought. We hold that § 2–725 does not apply to an action for personal injury or personal property damage, unless the latter is recoverable as consequential damages for breach of a contract or sales warranty. Our view is, therefore, similar to the second view stated above. *See Heavner v. Uniroyal, Inc.,* 63 N.J. 130, 305 A.2d 412 (1973).

Section 2–725 was always intended to have an application consistent with the overall purposes and objectives of the U.C.C. It is plainly focused on economic and contractual damages. The Official Comment to § 2–725 emphasizes that it applies only to disputes of a "commercial" and "contractual" nature arising under a sales contract:

> **Purposes:** To introduce a uniform statute of limitations for *sales contracts,* thus eliminating the jurisdictional variations and providing needed relief for concerns doing business on a nationwide scale whose *contracts* have heretofore been governed by several different periods of limitation depending upon the state in which the transaction occurred. This Article takes sales contracts out of the general law limiting the time for commencing *contractual* actions and selects a four year period as the most appropriate to modern *business practice.* This is within the normal *commercial* record keeping period.

U.C.C. § 2–725 comment, 1B U.L.A. 588 (1989) (emphasis added). The comment parallels the stated purpose of Article 2 of the U.C.C., which is to establish the law of commercial contracts and contractual remedies.[6] The "[u]nderlying purposes and poli-

---

**6.** That § 2–725 was intended to apply only to cases of breach of contract is also reflected in the Official Comments to § 2–715(2). Section 2–715(2) defines consequential damages to include "injury to person or property proximately resulting from any breach of warranty." The Comments state:

> Subsection (2) operates to allow the buyer, in an appropriate case, any consequential damages which are the result of the seller's breach [and] refusing to permit recovery un-

less the buyer could not reasonably have prevented the loss by cover or otherwise. Subparagraph (2) carries forward the provisions of the prior uniform statutory provision as to consequential damages resulting from breach of warranty, but modifies the rule by requiring first that the buyer attempt to minimize his damages in good faith, either by cover or otherwise.

> . . . .

cies of [the U.C.C.] are (a) to simplify, clarify and modernize the law governing *commercial transactions;* (b) to permit the continued expansion of *commercial practices* through custom, usage and agreement of the parties; (c) to make uniform the law among the various jurisdictions." § 1–102(2) (emphasis added). The New Jersey Supreme Court emphasized the same theme in *Heavner v. Uniroyal, Inc.,* 63 N.J. 130, 152–53, 305 A.2d 412, 424 (1973):

> Fundamentally, the chapter is commercially and contractually oriented. Its basic framework is that of transactions for the sale of goods between a buyer and his seller and, in the main, the legal incidents with which it deals contemplate two such contracting parties in the conventional commercial setting and claims based on economic loss or loss-of-the-bargain.

One scholar explained this limited policy behind the scope of the limitations period in § 2–725:

> Section 2–725 sets the period for limitation of action at four years from the time the breach of warranty occurs. The breach occurs "when tender of delivery is made." This is obviously based entirely on the concept that the product is not in accordance with expectations so the buyer has been damaged and has a cause of action at the moment the article is tendered to him. It completely fails to provide appropriate relief in the case of personal injury, where the cause of action arises only when the injury occurs.

If the injured party is not the buyer, the statute of limitations may well have run before he even has a cause of action. The drafters were clearly not thinking of personal injury cases in this section, and if it applies to them the unjust result carries overtones of unconstitutionality.[7] The courts have uniformly felt that they must be resourceful to find a way around such an "unbelievable" result. The usual method is to find that the provision is not intended to apply to tort actions.

Wade, *Tort Liability for Products Causing Physical Injury and Article 2 of the U.C.C.,* 48 Mo.L.Rev. 1, 9–10 (1983) (footnotes omitted). In short, § 2–725 was not intended to govern tort actions for injuries to persons or to personal property, and this is so even though a U.C.C. warranty action may now be maintained for personal injury, independent of a contract of sale, under § 2–318.

Damages for personal injury may now be predicated upon a rather recent amendment to the U.C.C. Section 2–318 (Alternative C) was enacted into law in Utah as § 70A–2–318 (1980) in 1977,[8] to extend a seller's warranty liability beyond the narrow sphere of contracting parties to include persons who suffer personal injury damages and "who may reasonably be expected to use, consume or be affected by the goods" under warranty. Section 2–318 does not expressly impose warranty liability on any person other than a "seller." The Official Comment to § 2–318 explains the purpose of the section and, by implica-

---

Particular needs of the buyer must generally be made known to the seller while general needs must rarely be made known to charge the seller with knowledge.

Any seller who does not wish to take the risk of consequential damages has available the section on contractual limitation of remedy.

U.C.C. § 2–715 comments 2 & 3, 1B U.L.A. 418 (1989).

**7.** Several courts have acknowledged that § 2–725 might bar a personal injury cause of action before the injury occurs. They have also declared that their state's policy is against such a result. *See Parish v. B.F. Goodrich Co.,* 395 Mich. 271, 282, 235 N.W.2d 570, 574 (1975); *Victorson v. Bock Laundry Mach. Co.,* 37 N.Y.2d 395, 403, 335 N.E.2d 275, 278, 373 N.Y.S.2d 39, 43 (1975).

**8.** In 1977, the Utah U.C.C. was amended and § 70A–2–318 (1980) became effective May 10, 1977. 1977 Utah Laws ch. 272, § 4. Utah Code Ann. § 70A–2–318 provides as follows:

> *Third-party beneficiaries of warranties express or implied.* A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section with respect to injury to the person of an individual to whom the warranty extends.

tion, reflects the narrow scope of other U.C.C. warranties:

> The purpose of this section is to give certain beneficiaries the benefit of the same warranty which the buyer received in the contract of sale, thereby freeing any such beneficiaries from any technical rules as to "privity." ... Implicit in the section is that any beneficiary of a warranty may bring a direct action for breach of warranty against the seller whose warranty extends to him.

U.C.C. § 2–318 comment 2, 1A U.L.A. 556 (1989). Thus, the amendment departs somewhat from the contract-rooted warranty rationale that other U.C.C. warranties are built on. Nevertheless, the scope of § 2–725 was not enlarged to apply to personal injury claims under § 2–318.

In applying § 2–725, a number of courts now distinguish claims for breach of contract damages from claims for personal injury damages or tortious injury and hold that § 2–725 does not apply to the latter claims. The court in *Appalachian Power Co. v. General Electric Co.,* 508 F.Supp. 530, 532 n. 1 (W.D.Va.1980), stated that § 2–725 governs "an action for injury to the goods, or to the subject of the sale by a party to the contract," but tort injuries are subject to the relevant tort statute of limitations. Similarly, the court in *Kelly v. Ford Motor Co.,* 110 R.I. 83, 290 A.2d 607 (1972), stated that § 2–318 was adopted to broaden a seller's warranty to a limited number of third persons and to impose a manufacturer's as well as a seller's warranty,[9] but that the amendment, even though itself part of the U.C.C., did not carry with it the four-year limitations period from date of delivery prescribed in § 2–725. In *Victorson v. Bock Laundry Machine Co.,* 37 N.Y.2d 395, 408, 335 N.E.2d 275, 281, 373 N.Y.S.2d 39, 47–48 (1975), Judge Fuchsberg stated in a concurring opinion: "[A] careful reading of section 2–725 ... points up the complete absence of references to personal injury and

third-party beneficiary actions. The inference is that the intent was to deal exclusively with commercial transactions."

Except for § 2–318, the language of the U.C.C. warranty provisions presuppose bargaining by parties in privity of contract. The contractual nature of § 2–725 is emphasized by the language in subsection (1) that the parties to the contract may reduce the limitations period: "By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it." Indeed, the contracting parties may even bargain as to the scope of the warranties and whether consequential damages may even be allowed. *See* § 2–316, § 2–719(3). *But see* § 2–318. Tort "warranties" are not subject to such modifications. *See Heavner,* 63 N.J. at 155, 305 A.2d at 425–26.

### C. Conclusion

Bonneville sold the beam to Davidson on April 29, 1976, and Davidson sold it to Quality Construction on June 24, 1976. Quality Construction installed the beam in a building owned by the landlord of the original plaintiff, Thrifty Corporation. It was Thrifty's personal property that was damaged when the roof collapsed. This suit was filed on July 26, 1983, more than seven years after Bonneville sold and delivered the beam to Davidson. As shown above, § 2–725 applies only to U.C.C. contract and U.C.C. warranty actions (except a warranty action under § 2–318) and to indemnity actions that grow out of such warranty actions. It follows that § 2–725 does not apply to Davidson's indemnity actions where the underlying action was not for a breach of a U.C.C. contract or warranty.

In sum, § 2–725 does not govern any of Davidson's claims against Bonneville or Sproul, whether based on negligence, breach of warranty, contribution, or indemnity.[10]

---

**9.** Expansion of the seller's warranty in § 2–318 to the manufacturer was not adopted in Utah as in Rhode Island. *Kelly,* 110 R.I. at 87 n. 1, 290 A.2d at 609 n. 1. *See supra,* note 8.

**10.** Whether those actions state facts giving rise to a claim upon which relief can be granted, we do not decide.

## III. APPLICABLE STATUTE OF LIMITATIONS

We turn next to the general statutes of limitation to determine what the controlling limitations periods are for the actions alleged. What is really involved in this case is the assertion of a right of indemnification, even though the plaintiff has rather liberally invoked other claims for relief in addition.

■ Except for an indemnity action growing out of a U.C.C. action for the sale of goods, *see Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214 (Utah 1984), it makes no difference what the underlying claim is that gives rise to an action for indemnity. A common-law indemnity action is based on a theory of quasi-contract or contract implied in law and is generally held to be governed by the statute of limitations applicable to actions on implied contracts. A common-law indemnity action is, therefore, wholly distinct from the underlying action which gave rise to the right of indemnity. One commentator has stated:

An action on an implied contract of indemnity is wholly independent as a cause of action from the transaction or situation which gave rise to the right of indemnity. Although the right to indemnity may arise out of a tort, the action to enforce the right usually is not governed by the statute relating to the tort. Similarly, a right of indemnity which arises out of an express contract to pay money or perform some other act generally is not governed by the statute of limitations applicable to an action upon an express contract, where such statute is distinct from the statute governing actions upon implied contracts.

Annotation, *What Statute of Limitations Covers Action for Indemnity*, 57 A.L.R.3d 833, § 3 (1974). It is generally held that a contract statute of limitations, and specifically the statute that governs implied-in-fact contracts, applies to an action for common-law indemnity. *Stephenson v. Duriron Co.*, 292 F.Supp. 66 (S.D.Ohio 1968), *aff'd*, 428 F.2d 387 (6th Cir.1970); *American Ins. Group v. McCowin*, 7 Ohio App.2d 62, 218 N.E.2d 746 (1966); *Owings v. Rose*, 262 Or. 247, 497 P.2d 1183 (1972).

Section 78–12–25(1) provides a four-year statute of limitations for "an action on a contract, obligation or liability not founded on an instrument in writing." This provision, according to the authorities above-stated, governs the indemnity action in this case.

■ A common-law indemnity action does not arise when the underlying damage occurs; rather, it runs from the time of the payment of the underlying claim or the payment of a judgment or a settlement. *See Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214, 218 (Utah 1984); Annotation, *When Statute of Limitations Commences to Run Against Claim for a Contribution or Indemnity Based on Tort*, 57 A.L.R.3d 867, § 3[a] (1974).

■ The general policy in Utah is that statutes of limitations commence to run when the cause of action accrues. *See* Utah Code Ann., § 78–12–1 (1987). *Cf. Horton v. Goldminer's Daughter*, 785 P.2d 1087 (Utah 1989); *Berry v. Beech Aircraft Corp.*, 717 P.2d 670 (Utah 1985). A tort cause of action accrues when it becomes remediable in the courts, that is, when all elements of a cause of action come into being. *State Tax Comm'n v. Spanish Fork*, 99 Utah 177, 100 P.2d 575 (1940). Davidson's other actions, warranty, negligence, and contribution, are governed by § 78–12–25(1) and (2). They also commenced to run when Davidson paid the settlement obligation.

All Davidson's claims for relief were subject to the four-year statute of limitations in § 78–12–25. They arose when payment was made on the underlying settlement agreement on November 16, 1983. Davidson's claims were filed July 26, 1983, long before the four-year period allowed by § 78–12–25 ran and are not therefore barred.

HOWE, Associate C.J., and DURHAM and ZIMMERMAN, JJ., concur.

HALL, C.J., concurs in the result.